UNITED STATES, Appellee

v.

JOHNNIE ALLUMS, Corporal, U. S. Army, Appellant

5 USCMA 435, 18 CMR 59

No. 5431

Decided January 21, 1955

LT COL Harley A. Lanning, U. S. Army, MAJ Edwin Doran, U. S. Army, 1ST LT Justin L. Vigdor, U. S. Army, and 1ST LT Carl D. Hall, U. S. Army, for Appellant.

LT COL Thomas J. Newton, U. S. Army, 1ST LT Ezra B. Jones, Jr., U. S. Army, and 1ST LT William G. Fowler, U. S. Army, for Appellee.

## Opinion of the Court

PAUL W. BROSMAN, Judge:

Corporal Allums was tried by a general court-martial convened at Bamberg, Germany, under two specifications alleging narcotics offenses in violation of the Uniform Code of Military Justice, Article 134, 50 USC § 728. The first specification alleged that the accused did "on or about 7 March 1954, wrongfully have in his possession 11.6 grams, more or less, of marihuana"; and the second, that he did "on or about 1 March 1954, wrongfully sell marihuana to Private First Class Aaron Griffin." Despite his plea of not guilty to both specifications, the court-martial found the accused guilty as charged and sentenced him to receive a dishonorable discharge, as well as to total forfeitures and confinement at hard labor for five years. The convening authority approved both the findings and sentence. Following affirmance by a board of review in the office of The Judge Advocate General, United States Army, we granted the accused's petition to determine whether prejudicial error lay in the law officer's refusal to furnish the court-martial with the following instructions requested by the defense:

"Aaron Griffin is what the law calls an accomplice in the offense charged in Specification 2. You are advised that the accused cannot be convicted of this offense upon the uncorroborated testimony of an accomplice, if such testimony is self-contradictory, vague, or uncertain.

"The uncorroborated testimony of an accomplice, even though apparently credible, is of doubtful integrity and is to be considered with great caution."

436

## II

At the trial, agents of the Criminal Investigation Division testified that on March 7, 1954—acting on information supplied by one Maria Renz—they stopped a taxi in which the accused was riding and thereafter apprehended and searched him. During this search three small packets were found in the accused's possession. The contents of two of these parcels were analyzed chemically and—according to expert testimony—consisted of marihuana.

Private Griffin—the alleged vendee named in the second specification—testified that on March 1, 1954, he had met the accused in downtown Bamberg, and at that time the latter had handed him several packages whose contents Griffin supposed to be marihuana. During this same meeting, Griffin agreed to pay Allums twenty dollars—although this promise was never carried out. The witness asserted that on smoking some of the substance delivered to him by the accused, he had become sick and thereafter had thrown the remainder away. Griffin denied having requested Allums to secure marihuana for him, and as well that he had offered initially to pay the accused for the drug in question. He conceded that he did not know whether the substance he had smoked was in fact marihuana, and asserted that he had never used that narcotic previously.

Next—and despite objection from the defense on the ground of involuntariness—there was received in evidence a written confession by the accused. According to this document, Allums had on March 1, 1954, sought out Maria Renz and purchased from her six packages of marihuana at a cost of four dollars each. He retained one of these for his own use, donated another to a friend, and thereafter handed the remaining four parcels to Private Griffin. He stated that "For the four packages turned over to GRIFFIN, I received $20.00"—and added that on March 7, 1954, he had purchased two additional packets from the same source, which, together with "another small package containing marihuana were confiscated by the investigators."

With the introduction of the confession, the prosecution rested. A motion for findings of not guilty as to the second specification was denied—after which the defense tendered evidence indicating that Private Griffin bore a bad reputation for truth and veracity, while, on the other hand, the accused's general character was good. The accused himself did not take the stand and the defense rested—after which Griffin was recalled by the court. The witness then explained that he did not know "if you would call it a purchase or not," but that, after the accused had surrendered to him the packets thought to contain marihuana, the latter "was to pay him twenty dollars." He elaborated, "At the time I didn't have any money and he said that was all right I could pay him later." Griffin stated that Criminal Investigation Division personnel had identified him through Corporal Allums, but that he had been able to secure a letter of immunity from prosecution.

In his closing argument, the accused's lawyer urged that the transaction amounted to no more than an agency arrangement by which the accused had agreed to secure the marihuana for Griffin. After the trial counsel had sought to negate this contention in argument, the accused requested that he be permitted to testify. His account was consistent with the claim that he had acted as an agent for Griffin, in that he insisted that the latter had asked that he purchase the narcotic for him. He denied having received any sort of payment therefor, and observed that his confession to the contrary "must be a mistake or something." He conceded that Griffin "asked me what it cost and he said he would give me that twenty dollars to pay for my taxi or something like that." During cross-examination, Allums admitted having used marihuana on a few occasions in the past, although he was vague concerning its effects. He attributed to his friendship for Griffin his willingness to extend credit to the latter.

## III

Government appellate counsel have

advanced several arguments to sustain the denial of the requested instructions relative to accomplice testimony. Their first position is that Griffin was not, in fact, an accomplice. In view of our determination with respect to other Government contentions, we need not rule finally on this point. However, it will be noted that in specification 2 Griffin was named as the vendee of the marihuana. Furthermore, both his testimony, and the confession of the accused, were utilized by the prosecution for the purpose of showing that a sale to the former had taken place. Under such circumstances, it would be difficult to distinguish the present situation from that found in United States v. Bey, 4 USCMA 665, 16 CMR 239.

There the issue was whether the giver of a bribe must be considered an accomplice of the bribe's recipient for the purpose of the latter's trial. We answered clearly in the affirmative, and emphasized that "All participants in a bribe transaction are chargeable under Article 134 of the Code, supra." Similarly, Griffin's participation in the transfer of marihuana, with which we are now concerned, would seem to bring him within the purview of Article 134, and thereby to render him an accomplice under the Bey approach.

Judge Latimer—dissenting in Bey—suggested that the persons from whom the accused there was alleged to have received bribes were more nearly the victims of the latter's crimes than participants therein. He argued, therefore, that they should not be regarded as accomplices any more than should "the victim of a robbery who hands over his wallet." Even this position, however, furnishes little comfort to the Government in the present case, since Griffin appears—by any construction of the testimony—to have been a willing participant in the marihuana transaction. There is a sense, of course, in which almost inevitably the vendee of a habit-forming drug is a victim of the seller. Moreover, as to addicts, the choice between purchasing and not buying may be said to be a limited one. These generalizations, however—even if applicable to the present record—

**438**

scarcely reflect the type of victimization to which the dissenter referred in Bey. And so we incline to believe that, under the views of every member of this Court, Griffin—as the vendee of marihuana—would qualify as an accomplice in its sale.

## IV

The Government has also urged that —although Griffin be deemed an accomplice—the law officer did not err in denying the requested instructions. This suggestion is especially plausible with respect to his denial of the requested language to the effect that an accused may not lawfully be convicted on an accomplice's uncorroborated testimony —if the testimony is self-contradictory, vague or uncertain. Clearly this instruction was predicated on the statement found in paragraph 153a of the Manual for Courts-Martial, United States, 1951, that "a conviction cannot be based . . . upon the uncorroborated testimony of a purported accomplice in any case, if such testimony is self-contradictory, uncertain, or improbable." It is undeniable that Griffin's testimony was "uncertain" as to some points. However, we are sure, as a matter of law, that it was *corroborated* within the meaning of the Manual passage.

For one thing, substantial corroboration is found in the accused's pretrial statement. The defense urges, though, that, in view of the dispute concerning the confession's voluntariness, that document may not be relied on for a corroborative purpose. Yet the defense does not—and, could not well—contend that the accused's testimony *at the trial* was other than voluntary. That testimony, we are certain, provides all necessary corroboration to sustain findings of guilty under the specification to which Griffin's testimony related.

Moreover, we are unsure that the reference in the Manual's paragraph 153a to the "uncorroborated testimony of a purported accomplice" was directed to the *members* of a court-martial—or is to be applied by them. It has been suggested, indeed, that matters in the nature of the corroboration of an

accomplice's testimony involve problems of legal sufficiency solely, and that legal sufficiency was meant by the Code and Manual's draftsmen to be handled by the *law officer* at the trial—and thereafter, of course, by appellate bodies. Under this view, the members of any court would be concerned with corroboration only in connection with their right to overrule a law officer's action on a motion for findings of not guilty. Cf. United States v. Manuel, 3 USCMA 739, 14 CMR 157 (concurring opinion). In support of this position, it must be recognized that corroboration is a technical concept—one which, like admissibility, is difficult of application by a court-martial, and usually beyond the expertise of its members.

To introduce problems of corroboration into a court's deliberations on guilt or innocence—it has been further urged —serves only to confuse the triers of fact. Cf. Holland v. United States, 348 US 121, 99 L ed —, 75 S Ct 127. Moreover, the safeguard furnished by rules requiring corroboration can be maintained adequately by the law officer, who is better positioned and trained to apply the concept. Under this approach, of course, the members of the court-martial would pass on the issue of guilt or innocence solely in the light of the standard of reasonable doubt, with appropriate instructions from the law officer concerning matters peculiarly pertinent to credibility. Also, under this view a law officer would at no time be required to instruct that a conviction cannot be founded on the uncorroborated or vague testimony of a purported accomplice. If he discovered a want of corroboration, he would simply instruct the court that, as a matter of law, its members may not convict. However, if he found that corroboration was present, the case would go to the court for findings. Thereafter, the correctness of the law officer's view with respect to corroboration would be tested by reviewing authorities. On this whole suggested approach we also need not pass at this time.

With reference to the second requested instruction, we observe that it, too, uses the word "uncorroborated." Since we hold that, as a matter of law, there *was* corroboration here, the requested instruction—if given in the words requested—could only have misled court members. However, we are also sure that the requested instruction, as phrased, would suffice to place the law officer on notice that appropriate advice to the court was desired by the defense concerning the special need for close scrutiny of accomplice testimony. Cf. United States v. Burden, 2 USCMA 547, 10 CMR 45; United States v. Phillips, 3 USCMA 137, 11 CMR 137. Apropos in such instances is the wording of the Manual for Courts-Martial—utilized, in fact, in the defense request—that such testimony "is of doubtful integrity and is to be considered with great caution." See paragraph 153*a*.

V

Granting error, however, the shoal on which the defense founders in the case before us is that of prejudice. The very circumstances which convince us beyond peradventure that corroboration existed, equally support the conclusion that the defense position would not have been bettered had the law officer granted the requested instruction. The most prominent item of compelling evidence is the accused's own testimony. He conceded the transfer of four packages—which he believed to contain marihuana—to Griffin. These parcels were among the six first purchased for the sum of twenty-four dollars from Maria Renz—from one of which he himself had smoked. The delivery to Griffin took place almost simultaneously with the creation of a twenty dollar obligation due from Griffin to Allums. The latter's explanation that the debt was for "taxicab fare or something like that" simply defies credit. Neither does the accused's version, to the effect that he had served merely as an emissary of Griffin for the purpose of purchasing narcotics, ring true—and quite apart from Griffin's contradictory account, and the absence of such an explanation in the accused's pretrial confession. Griffin did not supply the accused with money with which to effect the purchase,

**439**

nor—so far as we can see—was there any claim that Griffin told the latter what quantity of the narcotic he should procure. Indeed, a part of the purchase from Maria Renz was clearly made for the accused's own consumption, and he personally used one of the six packages secured. Viewed most favorably to him, the accused's testimony suggests little more than that a preliminary arrangement had been entered into by which he would obtain sufficient marihuana to satisfy his own needs plus a quantity available for resale *at a profit* to Griffin. Despite—perhaps because of —this testimony, the court gave short shrift to the defense contention that the initial purchase from Renz was in reality made by Griffin, in part at least, as an undisclosed principal for whom the accused acted as agent. We cannot possibly believe that granting the requested defense instruction on accomplice testimony would have produced a different result at the hands of the court-martial.

VI

Accordingly the decision of the board of review is affirmed.

Chief Judge QUINN and Judge LATIMER concur.