UNITED STATES, Appellee

v

JERRY E. SHANKS, Private First Class,
U. S. Marine Corps, Appellant

12 USCMA 586, 31 CMR 172

No. 15,235

December 22, 1961

*Lieutenant Colonel M. G. Truesdale*, USMC, and *Lieutenant Eric L. Keisman*, USNR, were on the brief for Appellant, Accused.

*Lieutenant Colonel L. W. Martin*, USMC, and *Lieutenant John W. Boult*, USNR, were on the brief for Appellee, United States.

FERGUSON, Judge:

Tried by special court-martial, the accused was found guilty, with certain exceptions and substitutions, of four specifications of larceny, in violation of Uniform Code of Military Justice, Article 121, 10 USC § 921. He was sentenced to bad-conduct discharge, forfeiture of $72.00 per month for six months, confinement at hard labor for a like period, and reduction to the grade of private. The convening authority made a minor reduction in the amount of forfeitures adjudged, but otherwise approved the sentence. The supervisory authority disapproved the findings of guilty with respect to two specifications of the Charge. Upon reassessing the penalty, he found the punishment as approved below appropriate. The board of review affirmed after considering a single assignment of error regarding the severity of the approved sentence. We granted review on the issue whether the instructions governing consideration of the accused's confessions were proper.

After demonstrating that accused had been properly advised of his rights under Code, supra, Article 31, 10 USC § 831, and that his interrogator had not used coercive measures, the trial counsel sought to introduce in evidence two pretrial statements made by him to an Investigator Craig on December 4, 1960, and December 5, 1960. Defense counsel objected to receipt of the exhibits on the ground that they were "given while the accused was under coercion." In support of that contention, accused offered his own testimony and that of a Private First Class Mathews.

In essence, accused testified that he was awakened by a Private First Class Kerrin on the same day that his pretrial statement to Craig was executed. Kerrin demanded to know if accused had taken one of the items alleged to have been stolen, a radio belonging to Corporal Long. When accused denied that he had done so, Kerrin began to beat him, interspersing the blows with further questions concerning the radio's location. When Kerrin walked away, accused asked to speak with Long outside. Kerrin followed them out of the barracks and asked accused again what had happened to the radio. When accused once more denied taking it, Kerrin struck him. He then told Long "what happen[ed] out of fear, sir," and Kerrin knocked him down.

The beating administered by Kerrin was "the biggest reason" for his statement to Craig. He said nothing to the investigator of Kerrin's assault, however, because Kerrin informed him "that if I ever told anybody about it, being beaten by him, it would be all over for me."

Private Mathews testified that, on the morning in question, he had twice observed Private First Class Kerrin kicking the accused. He had been awakened by a "commotion" and also heard the two men talking loudly.

Corporal Long testified that accused "escorted" him to the shop in which he found his property and that accused was thereafter placed in the hands of the military police.

The defense counsel's objection was overruled and the statements were read into evidence. With regard to the matter, the president instructed the court members as follows:

"For further instructions to the court I refer to Appendix XXI, page 171 of the Military Justice Handbook, title 'The Law Officer'. Department of the Army Pamphlet Number 27–9, dated April 1958. Instruction on effect of ruling of law officer admitting accused's confession or admission. You are advised that my ruling, receiving in evidence Prosecution Exhibit 4, the out-of-court statement of the accused with respect to the offenses of larceny, is final only on the question of admissibility. My ruling merely places the statement before the court; it does not conclusively establish the voluntary nature of the statement. Each of you, in your deliberation upon the findings of guilt or innocence, may come to your own conclusion as to the voluntary

nature of the statement. You may accept the statement as evidence only if you determine beyond a reasonable doubt that it was voluntary. If you determine that the statement was involuntary, you must reject it and disregard it as evidence in the case. You are also advised that any evidence adduced as to the voluntary or involuntary nature of the accused's out-of-court statement may be considered by you in determining the weight that you will give to the statement."

There is no doubt that the foregoing evidence raised a substantial issue concerning whether accused's written statements to Investigator Craig were the product of the earlier coercive measures alleged to have been employed by Private First Class Kerrin. United States v Monge, 1 USCMA 95, 2 CMR 1; United States v Bennett, 7 USCMA 97, 21 CMR 223. Indeed, aside from from accused's express declaration that he confessed to Craig because of the fear which Kerrin had induced, there is a presumption that the subsequent confession is the result of the same improper influence which led to the earlier statement to Long. United States v Monge, supra; Lyons v Oklahoma, 322 US 596, 88 L ed 1481, 64 S Ct 1208 (1944). The cat can nevertheless be rebagged, and the question whether accused made his statement because of the earlier coercion or for some other reason is primarily one of fact for the determination of the court-martial. United States v Bennett, supra; United States v Bayer, 331 US 532, 91 L ed 1654, 67 S Ct 1394 (1947).

The difficulty with the record now before us is that it discloses no meaningful submission of this important question to the court-martial. True, the president gave a general instruction on "voluntariness," but he made no mention of the possible effect of Kerrin's acts on the statements made to Craig or of the need to find that these were not motivated by the fear earlier instilled in him. In short, no attempt was made by the president to tailor his instructions regarding the statements to the evidentiary situation before him. United States v Acfalle, 12 USCMA 465, 31 CMR 51. Reversal is required, for accused was entitled to have that issue properly resolved.

Aside from the foregoing and because we authorize a rehearing in this case, we call attention to the fact that the transcript reveals the presence of other questionable evidence. For example, the record indicates that, following Kerrin's blows, accused led Corporal Long to the shop where he had apparently pawned the radio. See United States v Taylor, 5 USCMA 178, 17 CMR 178, and United States v Bennett, supra. Moreover, the second pretrial statement which accused executed and which was received in evidence against him bore little relation to the charges before the court-martial. Rather, it depicted commission of at least thirty-eight other offenses not charged, ranging through accused's military career to his activities in civilian life. If a rehearing is held in this case, we suggest that care be exercised, as it should in all cases, that only properly admissible evidence be utilized in order that accused may receive a fair hearing with respect to the charges upon which he is being tried.

The decision of the board of review is reversed, and the record of trial is returned to The Judge Advocate General of the Navy. A rehearing may be ordered.

Chief Judge QUINN and Judge KILDAY concur.