UNITED STATES, Appellee

v

CHARLES W. ZEIGLER, Staff Sergeant, U. S. Air Force, Appellant

12 USCMA 604, 31 CMR 190

No. 15,155

January 19, 1962

*Captain Hugh J. Dolan* argued the cause for Appellant, Accused. With him on the brief were *Colonel Joseph E. Krysakowski* and *Lieutenant Colonel Daniel E. Henderson, Jr.*

*Captain Richard T. Yery* argued the cause for Appellee, United States. With him on the brief were *Colonel Merlin W. Baker* and *Lieutenant Colonel Simpson M. Woolf.*

## Opinion of the Court

QUINN, Chief Judge:

The disclosure by two young girls, Christine and Debra, both of whom were under ten years of age, of what the accused did to them in his maid's room in the basement of their apartment building led to the accused's trial by general court-martial on two specifications of taking indecent liberties, in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934. At trial, the accused admitted he was with the children in the maid's room about the times alleged, but he denied he committed the acts charged. He maintained the children came into the room when he was cleaning it, and that he only gave each some candy and gum. Despite his testimony, the court-martial convicted the accused of both specifications, and sentenced him to dishonorable discharge, confinement at hard labor for two years, and accessory penalties. A board of review set aside the findings of guilty as to Christine on the ground her testimony was inconsistent, and in one important particular was directly contradicted by the testimony of her father. However, the board of review sustained the findings of guilty as to Debra because her testimony was "clear, definite, and precise." It modified the sentence by reducing the period of confinement to eighteen months. We granted further review to consider the correctness and effect of certain instructions by the law officer.

Appellate defense counsel contend the law officer erred to the accused's prejudice in instructing the court-martial on the so-called corroboration rule in a prosecution for a sexual offense. The general rule is set out in the Manual for Courts-Martial, United States, 1951, as follows:

". . . Also a conviction cannot be based upon the uncorroborated testimony of an alleged victim in a trial for a sexual offense, . . . if such testimony is self-contradictory, uncertain, or improbable." [Paragraph 153*a*, page 289.]

Whether the rule is merely a rule of guidance for judicial scrutiny of the evidence, or whether it is an appropriate matter upon which to instruct the court-martial need not detain us. See United States v Allums, 5 USCMA 435, 439, 18 CMR 59; cf. United States v Polak, 10 USCMA 13, 27 CMR 87. We move directly, as the accused urges, to the probable effect of the instruction upon the court members. The accused contends the instruction gave such exaggerated importance to the child's testimony[1] as to modify significantly the requirement of reasonable doubt and impose upon him the burden of "overcom[ing] the effect . . . [of her testimony] in order to obtain an acquittal." He also contends the instruction was not "understandably integrated" with the evidence so as to provide a proper standard by which the court-martial could measure the existence or absence of corroboration. See United States v Acfalle, 12 USCMA 465, 31 CMR 51. The challenged instruction is as follows:

"Now in this trial which is [for] sexual offenses, a conviction cannot be based upon uncorroborated testimony of the victim, if the testimony of the victim is self contradictory, uncertain or improbable. Now, on the other hand, if the testimony of the victim is not self contradictory, uncertain, or improbable, when considered in connection with other evidence and inferences to be drawn therefrom, and is not otherwise offset by other evidence, you may convict on the basis of such testimony."

Necessarily, under the rule of corroboration the testimony of the victim must be singled out for ▮ special mention and consideration. The instruction directs the court-martial to examine closely the victim's testimony, but it does not imply that this testimony is entitled to greater weight than that of any other witness. Cf. United States v Nash, 5 USCMA 550, 18 CMR 174. Nor does the instruction so connect the testimony of the victim with the ultimate burden of proof as to indicate that if the court-martial concluded the victim's testimony was not inconsistent, uncertain, or improbable, the burden of creating a reasonable doubt was cast upon the accused. On the contrary, the court-martial was directed to consider the other evidence and the fact that such evidence could "off-set" the testimony of the victim, even though that testimony was not uncertain or improbable.

Although it lacks preciseness, the instruction is nothing more than a restatement of the rule that conviction for a sexual offense can be based upon the uncorroborated testimony of the victim, but the fact the testimony is uncorroborated requires that it be carefully considered. See United States v Henderson, 4 USCMA 268, 15 CMR 268; United States v Polak, supra. While we may disapprove the involved phraseology, there is no erroneous rule of law set out in, or suggested by, the instruction.

The second instruction challenged on this appeal is as follows:

"LO: There was some evidence admitted regarding prior inconsistent statements by the witnesses Christine Logelin and Debra Smith. You are instructed that this evidence was admitted for the purpose of showing prior inconsistent statements and is not to be considered for the purpose of establishing the truth of the matter asserted in prior statements.

"PRES: Could you read that one over just once more?

"LO: There was some evidence admitted regarding prior inconsistent statements by the witnesses Christine Logelin and Debra Smith. You are instructed that this evidence was admitted for the purpose of showing prior inconsistent statements and is not to be considered for the purpose of establishing the truth

---

[1] Since the findings of guilty as to Christine were set aside, we shall consider the issues tendered by the accused as though they applied only to Debra.

of the matters asserted in prior statements."

As appellate defense counsel point out, the instruction was probably based on the statement in the Manual for Courts-Martial that, when evidence of a previous inconsistent statement is admitted to impeach a witness, "the law officer . . . should instruct the court . . . that such proof is to be considered for that purpose only [impeachment] and not for the purpose of establishing the truth of the matters asserted in the statement." Paragraph 153c, page 293. The instruction in issue does not explicitly indicate the limited purpose for which previous inconsistent statements were admitted. As a result, appellate defense counsel contend it is as meaningless as the celebrated phrase of Gertrude Stein, "Rose is a rose is a rose is a rose."[2] Government counsel maintain that, even if incorrect, the instruction did not prejudice the accused as to the offense regarding Debra because no previous statement inconsistent with her testimony was admitted into evidence.

The only attack on Debra's testimony by way of a previous inconsistent statement is whether she and Christine were ever present with the accused in the maid's room at the same time. On direct examination Debra testified the accused performed indecent acts on her person on several occasions. On cross-examination she was asked whether Christine was ever present with her. Her testimony on that point is as follows:

"Q: Now was anyone else ever in the maid's room when you and the kitty man[3] were there?

"A: No.

. . . . .

"Q: Was she ever in the maid's room when you and the kitty man were in there?

"A: No.

. . . . .

"Q: Do you remember being in another room on this same floor and answering questions to Colonel Bruckner?

"A: Yes, with you.

. . . . .

"Q: Now can you remember telling us at that time that Christine was in the room too when this happened?

"A: I wasn't down there with her.

"Q: Can you remember telling us that?

"A: No."

Later, on redirect examination Debra testified she had once walked into the maid's room and found Christine, "a boy," and the accused. To show the alleged previous, inconsistent statement, defense counsel called the Article 32 investigating officer as a witness. He testified as follows:

"Q [Defense Counsel]: . . . It is my understanding that you also interrogated Debra Smith, is that correct?

"A: That is correct.

"Q: Did Debra Smith ever state that she was in the maid's room with Sergeant Zeigler?

"A: Yes.

"Q: Did she make any statement as to whether or not Christine was ever in the maid's room at the same time?

"A: Yes I believe she did.

"Q: And what was that statement?

"A: As far as I can recall it was a statement that they were both in the maid's room with Sergeant Zeigler at the same time."

My brothers are of the opinion that the law officer's advice failed to inform the court-martial meaningfully of the purpose for which inconsistent statements might properly be used. I do not share that opinion. However, we all agree that the instruction did not prejudice the accused. I consider the instruction inartistic as to form but essentially correct in substance, especially in light of another instruction on the credibility of witnesses. My

---

[2] Gertrude Stein, *Sacred Emily.*

[3] The children called the accused the "kitty man" because he owned a cat.

brothers agree with the Government's position that Debra's trial testimony is not inconsistent with her previous testimony in the Article 32 investigation and, consequently, the accused suffered no prejudice as a result of the erroneous instruction.

The decision of the board of review is affirmed.

KILDAY, Judge (concurring):

I concur.

My associates agree on the disposition of the instant case, but travel separate paths in reaching their conclusions. Under the circumstances, it is appropriate that I set forth a short exposition of my own views.

Regarding the law officer's advice as to the necessity for corroboration. I am in substantial accord with the Chief Judge and join with him in his rationale. With respect to the second issue, however, I find myself more nearly in agreement with Judge Ferguson's position. The law officer's instruction properly apprised the court members that prior inconsistent statements could not be considered as evidence of the truth of the matters set forth therein. But, in my judgment, and despite his earlier general reference to credibility, the law officer's advice failed to inform the court-martial meaningfully of the purpose for which such statements might properly be utilized. Accordingly, I deem the instruction on prior inconsistent statements deficient. Nevertheless, as the Government argues, the pretrial statements made by Debra are not at all inconsistent with her testimony from the witness stand. The specification relating to Christine having been set aside by the board of review, accused stands convicted only for the offense involving Debra. It is apparent, therefore, that he suffered no prejudice from the erroneous advice.

For the foregoing reasons, I join in affirming the decision of the board of review.

FERGUSON, Judge (concurring in the result):

I concur in the result.

The Chief Judge and I are in agreement with respect to the ultimate conclusion to be reached in this case. In view of the disapproval of the specification relating to Christine by the board of review and the fact that a reading of the record discloses, as urged by the United States, that Debra made no statement to the pretrial investigating officer inconsistent with her testimony in court, it is clear to me that the instructions regarding corroboration and the effect to be accorded prior inconsistent statements did not prejudice the accused.

Nevertheless, I am unable to agree that the advice regarding the necessity for corroboration may be dismissed as merely lacking in precision or as inadvisedly utilizing involved phraseology. Rather, it appears the instruction is so worded that it offered little meaningful guidance to the court-martial and, therefore, deserves our unhesitating condemnation. See United States v Acfalle, 12 USCMA 465, 31 CMR 51, and United States v Shanks, 12 USCMA 586, 31 CMR 172. Be that as it may, the need for corroboration arose only with respect to the charge involving Christine, for Debra's testimony, as noted by the board of review, was neither self-contradictory, uncertain, nor improbable. United States v Henderson, 4 USCMA 268, 15 CMR 268.

Turning to the instruction on prior inconsistent statements, it is at once apparent that it conveyed even less information to the court members than did the advice regarding the need for corroboration. While the law officer did inform the court that it was not to consider such statements for the purpose of establishing the truth of the matters asserted therein, he did nothing to link these pretrial declarations with the effect which they had on the witnesses' credibility. Rather, he satisfied himself with the declaration that they were admitted "for the purpose of showing prior inconsistent statements." There is, therefore, small wonder the president asked that the advice be repeated, a factor which, in my opinion, argues its incomprehensibility.

Once more, however, the law officer's lapse must be held to have no effect

upon the accused's rights in view of the action of the board of review and the fact that the record demonstrates no inconsistency between Debra's trial testimony and her pretrial statements.

This record glaringly demonstrates the need for law officers carefully to consider their instructions in light of the evidence and so to frame them that their advice conveys to the court a meaningful picture of the legal concepts and limitations involved. United States v Acfalle, supra. That this law officer did not do so is clear and, but for the factors to which I have heretofore alluded, I believe that reversal would be required. As, however, we are faced only with findings of guilty regarding indecent liberties with Debra, whose testimony is neither contradictory, improbable, uncertain, nor at odds with her pretrial statements, there was no prejudice to accused's rights.

I, accordingly, join in affirming the decision of the board of review.