UNITED STATES, Appellee

v

FRANKLIN W. WINBORN, Seaman, U. S. Navy, Appellant

14 USCMA 277, 34 CMR 57

No. 16,812

December 13, 1963

*Lieutenant Colonel J. R. DeBarr,* USMC, argued the cause for Appellant, Accused. With him on the brief was *Lieutenant Ronald S. Schwartz,* USNR.

*Major J. M. Detrio,* USMCR, argued the cause for Appellee, United States. With him on the brief were *Commander Benjamin H. Berry,* USN, *Commander John D. Moroney,* USN, and *Lieutenant Colonel Remmel H. Dudley,* USMC.

## Opinion of the Court

KILDAY, Judge:

The accused stands convicted, through trial by general court-martial, of two instances of theft of packages from the mail, in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934. At the time of these offenses he was assigned as assistant postal clerk to the U. S. Navy Post Office, Subic Bay, Philippine Islands. His sentence as ultimately approved consists of a bad-conduct discharge, total forfeitures, confinement at hard labor for one year and six months, and reduction to the pay grade of E-1.

The case for the prosecution, on the two offenses for which the accused was found guilty, rested primarily on the testimony of one James L. Humphries, Seaman Apprentice, United States Navy, a fellow postal clerk. Humphries, in essence, testified that sometime in September or November 1961, he and the accused, while en route to Manila on a truck, opened some packages which Humphries had removed from the United States mails and took therefrom two watches. At another time, during the same period, while at the post office, they both removed some cameras from a mail package. None of the packages were addressed to either Humphries or the accused.

The only other testimony in this regard came from Seaman Recruit Pecore who stated that he heard some talk "that Winborn and Humphries had been taking some watches to Manila in the mail truck."

Subsequent to the testimony of Humphries, a pretrial statement of the accused, in which he substantiated the taking as described by the witness, was admitted into evidence.

During an out-of-court hearing on proposed instructions, defense counsel requested an instruction to the effect that "the testimony of an accomplice is to be regarded with suspicion and be carefully scrutinized before accepting it." In the discussion on the request, the law officer maintained the

**278**

requested instruction applied only to uncorroborated testimony. He believed that the accused's confession corroborated Humphries' testimony and, therefore, the request was inappropriate. He denied the request on the ground that "there's no rule that a particular witness who seems to have been an accomplice that his testimony should be looked upon with less wieght [sic] than another witness." He gave only the standard instruction on the right of the court-martial to judge for itself the credibility of any witness.

We granted accused's petition for review to consider whether:

1. The convening authority was disqualified from reviewing the record after trial by entering into a pretrial agreement with an accomplice in exchange for his testimony against the accused; and

2. The law officer erred in refusing to give the requested instruction on credibility of accomplice witnesses.

The testimony of Humphries was vital to the prosecution of the case against accused. It paved the evidentiary path for the admissibility of the accused's out-of-court statement by establishing the *corpus delicti.*[1] After delineating the part Winborn played in the charged offenses, Humphries, on cross-examination, disclosed that he also was charged with these offenses and that these charges had been referred to a general court-martial. Under questioning he admitted he had entered into an agreement with the staff legal officer, approved by the convening authority, to plead guilty at his trial in return for which the convening authority would approve a sentence no greater than a bad-conduct discharge and confinement for not more than one year. He also admitted that part of this agreement was that he would testify in the case against the accused. Although on redirect examination he alleged

that this was not his sole purpose in testifying—he "want[ed] to make up for a change"; nevertheless, when asked by defense counsel, "Would you have come here and testify if you hadn't made this deal with the convening authority?" Humphries replied, "I guess not."

The Government would have us look only to the language of the pretrial agreement, noting that it specifically sets forth "That this offer to plead guilty originated with me and my Counsel; that no person or persons whomsoever, have made any attempt to force or coerce me into making this offer or in pleading guilty." It argues that since neither the staff legal officer nor the convening authority arranged or induced Humphries to testify, or that his testimony was an integral part of the agreement, that this situation is distinguishable from this Court's decisions in United States v White, 10 USCMA 63, 27 CMR 137, and United States v Gilliland, 10 USCMA 343, 27 CMR 417. In this posture, the Government does not believe that the convening authority is disqualified from reviewing the record of trial.

In United States v White, supra, we set down the rule that a convening authority who granted *immunity* to a man in exchange for his testimony as a witness for the prosecution against an accused, was thereby precluded from thereafter reviewing the record of trial. As we pointed out therein, "This action precludes his being the impartial judge he must be to properly perform his judicial functions." *Ibid,* page 64. See also United States v Moffett, 10 USCMA 169, 27 CMR 243.

In United States v Gilliland,[2] supra, we stated that the foregoing rule would apply equally to a convening authority who entered into a *negotiated plea of guilty* with a witness, since the rule is:

---

[1] For a complete discussion of this matter, see United States v Smith, 13 USCMA 105, 32 CMR 105.

[2] It should be noted that *Gilliland* was decided adversely to that accused

because post-trial affidavits established that the convening authority who entered into the negotiated pretrial agreement had not later reviewed the accused's record.

". . . founded upon the idea that, in a criminal prosecution, one who is required to pass judgment upon the accused should be free from the probable influence of a previous incompatible action by him in the case."

We are not disposed to accept the Government's position that only the express terms of the convening authority's agreement with Humphries should be scrutinized for a resolution of this question. The whole of the record, as well as the pretrial agreement, is before us and rightfully so. Humphries' testimony as to the conditions upon which he executed the pretrial agreement can be considered to determine the full and true nature of his agreement with the convening authority. See United States v Hamill, 8 USCMA 464, 24 CMR 274. His testimony is not disputed.

From a review of this record it is patently clear that the prosecution was in need of a witness. No one else appeared who could establish the *corpus delicti* for these offenses. When Humphries' admission, under oath, that he would not have testified had it not been for the deal, is viewed in the further light of the fact that the agreement was signed on the very day that this trial commenced, little doubt remains as to the personal involvement of the convening authority in the prosecution of this case, "to an extent where there is at least some doubt of his ability to impartially perform his statutory duty." United States v White, supra. See also United States v Donati, 14 USCMA 235, 34 CMR 15. That task is incompatible with his prior action and requires a new review by a different convening authority.

In connection with the law officer's refusal to instruct on the credibility of accomplice witnesses, we note that the testimony of Humphries paved the evidentiary path for the admission of the accused's confession by supplying the necessary corroboration therefor. Had he not so testified accused, despite his confession, would have to have been acquitted for "An accused

cannot legally be convicted upon his uncorroborated confession or admission." Manual for Courts-Martial, United States, 1951, paragraph 140*a*; United States v Smith, 13 USCMA 105, 32 CMR 105, and the numerous cases cited therein. It is apparent from this record that Humphries alone supplied the necessary corroboration.

Were corroboration of the confession our only problem the solution would be simple for the rule is clear and unambiguous. However, it is the character of that testimony which gives us pause, for Humphries is an admitted accomplice. And, to cloud the issue further, an accomplice facing a general court-martial himself for the same offenses who has made a deal in return for his testimony. This requires a special consideration of his testimony. As recently as United States v Scoles, 14 USCMA 14, 33 CMR 226, this Court called attention to the skeptical approach the law has always taken of the testimony of an accomplice, noting that this approach " 'is a mark of the fair administration of justice.' " See Phelps v United States, 252 F2d 49 (CA 5th Cir) (1958), at page 52. By citing Guthrie v Commonwealth, 171 Va 461, 198 SE 481 (1938), in *Scoles*, we pointed to the origin of the rule in the ancient doctrine of "approvement" because of which " 'The credibility of such testimony was the subject of comment by the judge in the exercise of his common law function of advising the jury on the weight of all the evidence. Halsbury's Laws of England (2d Ed), Vol 9, p 222.' " (14 USCMA at page 19.)

An accomplice "has a 'built-in' untrustworthiness." Lyda v United States, 321 F2d 788, 794 (CA 9th Cir) (1963).

Previously in United States v Bey, 4 USCMA 665, 16 CMR 239, this Court cited numerous Federal cases, both Courts of Appeals and Supreme Court, on the need for instructions on accomplice testimony. In *Bey,* counsel for both sides had very ably argued and cited authority for their respective positions that it was or was not error

to refuse to instruct when requested. Among other cases, our attention was called by the defense to Lett v United States, 15 F2d 686 (CA 8th Cir) (1926), wherein the court stated:

". . . Ordinarily the failure of a court to charge that the testimony of an accomplice should be received with great caution is not assignable as error, in the absence of a request so to charge. Caminetti v United States, 242 US 470, 37 S Ct 192, 61 L Ed 442, LRA 1917F, 502, Ann Cas 1917B, 1168; Holmgren v United States, 217 US 509, 524, 30 S Ct 588, 54 L Ed 861, 19 Ann Cas 778; Perez v United States (CCA 9) 10 F (2d) 352.

"But it is the better practice so to instruct in any event, and a refusal to do so, when requested, is error. Caminetti v United States, Holmgren v United States, Perez v United States, and Egan v United States, supra; Albert v United States (CCA 6) 281 F 511."

The Government, in its argument in *Bey,* also cited respectable authority (United States v Becker, 62 F2d 1007 (CA 2d Cir) (1933); United States v Block, 88 F2d 618 (CA 2d Cir) (1937), cert den 301 US 690, 81 L ed 1347, 57 S Ct 793; and Pine v United States, 134 F2d 353 (CA 5th Cir) (1943), cert den 320 US 740, 88 L ed 439, 64 S Ct 40) for its position that, while desirable, an instruction need not be given, even though requested. It is interesting to note that in United States v Block, supra, that court also cited United States v Caminetti, supra, for its holding that "It is common practice so to caution a jury, but it is not necessary even when as here the accused asks that it be done."

Having determined, in *Bey,* that in general the decisions as to the presence of error turned on the facts of each particular case, or as in United States v Block and United States v Becker, both supra, the court specifically noted that the record contained " 'so complete an admission of guilt that no honest jury could have hesitated to convict,' " we stated that:

", . . We hold simply that it is

error for a law officer to refuse, *in a proper case,* a request for an instruction on accomplice testimony, which reasonably puts him 'on notice' that the issue is essential to a proper finding. United States v Phillips [3 USCMA 137, 11 CMR 137, page 143]." [Emphasis supplied.]

See also United States v Phelps, supra.

Was this, then, a *proper* case? We believe that it was. Humphries was an admitted accomplice, ▮ the only witness against the accused, and the requested instruction was couched in the proper language. Cf. United States v Allums, 5 USCMA 435, 18 CMR 59; Pine v United States, supra. What then of the "complete admission of guilt" as evidenced by the accused's confession?

Here we have a situation reminiscent of a circle. Winborn could not be convicted on his uncorroborated confession and the testimony of the accomplice supplied that corroboration. But this testimony is suspect and had the court not believed it, it could not then have considered the confession for the record would have been devoid of any evidence, direct or circumstantial, that the offense charged had probably been committed by someone. Paragraph 140*a* of the Manual, supra.

True it is that the admissibility of the confession is an interlocutory decision for the law officer ▮ alone and not subject to ▮ being overruled by the court. However, the credibility of a Government witness is a jury question. Lyda v United States, supra; United States v Verra, 301 F2d 381 (CA 2d Cir) (1962).[3]

In United States v Carengella, 198 F2d 3 (CA 7th Cir) (1952), cert den 344 US 881, 97 L ed 682, 73 S Ct 179, where the district court had instructed that the testimony of an accomplice is to be received by the jury with care,

---

[3] For additional citations of authority, see Modern Federal Practice Digest, Criminal Law, § 742(1).

caution, and suspicion, the court of appeals said:

"Carengella, arguing for a reversal of his conviction, attacks Tenerelli's testimony as of no inherent weight because he was an accomplice who expected to be benefited by testifying for the government. However, this was a matter of credibility for the jury."

The mere fact that Humphries was a competent witness[4] was a sufficient basis for the law officer's admission into evidence of Winborn's confession. However, competency is not identical with credibility, and the Government having utilized Humphries' testimony to establish the basis for admissibility carries the burden of establishing some credibility in him. See United States v Scoles, supra, page 22, separate opinion.

In the case at bar, the law officer gave only a general instruction on credibility of witnesses, declining to give the requested instruction as to accomplice testimony in the mistaken belief that "there's no rule that a particular witness who seems to have been an accomplice that his testimony should be looked upon with less wieght [sic] than another witness." That this statement is incorrect is amply demonstrated above. The charge of the law officer fell short of the requirements of the situation. Freed v United States, 266 Fed 1012 (CA DC) (1920).

"Whether the error is reversible error depends on the circumstance of each case and the conduct of the trial as a whole." Phelps v United States, 252 F2d 49, 53 (CA 5th Cir) (1958). In Pine v United States, supra, that court set up three criteria for reversible error in situations covering the disputed issue in this case: Refusal "may be regarded as reversible error if, but only if, (1) it is in itself a correct charge, (2) it is not substantially covered in the main charge, and (3) it is on such a vital point in the

case that the failure to give it deprived defendant of a defense or seriously impaired its effective presentation." See also Phelps v United States, supra, where the court found the trial judge's failure to allow the jury to decide these questions plain error under Rule 52(b) of the Federal Rules of Criminal Procedure, United States Code, Title 18.

We believe that this case falls within the test set forth in Pine v United States, supra. The re- quested instruction was correct, it was not substantially covered by the general instruction on credibility, and the accused was deprived of his right to have the court members consider Humphries' testimony in its proper light. United States v Smith, supra.

While it is not improbable that the same result would have been reached, had the law officer instructed as requested, it is not for us to speculate upon this question and resolve it against the accused. Freed v United States, supra.

The decision of the board of review is reversed. The record is returned to The Judge Advocate General of the Navy. A rehearing may be ordered.

Judge FERGUSON concurs.

QUINN, Chief Judge (dissenting):

I disagree with the majority on the question of prejudice. In United States v Allums, 5 USCMA 435, 18 CMR 59, we held the accused was not prejudiced by the erroneous refusal of a request to instruct on accomplice testimony. The basis for our conclusion was that the accused's testimony at trial amounted to a judicial admission of guilt. Next to accused's judicial admission of guilt, his voluntary, unchallenged confession under oath is perhaps the strongest evidence of guilt. See United States v Smith, 13 USCMA 105, 32 CMR 105. In face of the accused's confession under oath, which was admitted into evidence without objection, I am unable to see how he was prejudiced by the absence of an accomplice instruction. Pittsburgh Plate Glass Company v United States,

---

[4] See 120 ALR 751.

260 F2d 397, 402 (CA4th Cir) (1958), affirmed, 360 US 395, 3 L ed 2d 1323, 79 S Ct 1237 (1959).

The majority stress the fact that Humphries' testimony is the only evidence of the *corpus delicti;* and "had the court not believed it, it could not then have considered the confession." The argument suggests that sufficiency of the evidence to establish probable commission of the offense is a question of fact for the court-martial, rather than one of law for the law officer. We considered, but did not decide, the point in the *Allums* case.

Under the majority's holding the law officer apparently would be required, at least when requested, to instruct the court-martial that it must, before considering the confession, be satisfied first from the evidence, *aliunde* the confession, that the offense charged was probably committed. The Court of Appeals for the Ninth Circuit rejected that contention in Iva Ikuko Toguri D'Aquino v United States, 192 F2d 338, 357 (1951). Some state courts have reached a similar result. Lee v Commonwealth, 155 Ky 62, 159 SW 648 (1913). People v Williams, 189 Cal App 2d 29, 11 West's Cal Rptr 43 (1961); State v Hale, 45 Hawaii 269, 367 P2d 81 (1961). The independent corroboration evidence rule in the military practice is "an interlocutory question of the admissibility of the confession." United States v Smith, supra, page 113. Consequently, in my opinion, the sufficiency of the showing of *corpus delicti* apart from the confession is for the law officer, not the court-martial. The court need not, therefore, be instructed on the subject, other than it must find on *all* the evidence that the accused is guilty beyond a reasonable doubt.

So far as the action of the convening authority is concerned, the record of the proceedings indicates that Humphries' plea of guilty included a requirement that he testify against the accused. Under United States v Gilliland, 10 USCMA 343, 27 CMR 417, the convening authority was disqualified from reviewing the record of trial. I would return the case to The Judge Advocate General for submission to a competent convening authority for further proceedings under Articles 61 and 64, Uniform Code of Military Justice, 10 USC §§ 861 and 864.