OPINION OF THE COURT UPON REHEARING
YOUNG, Senior Judge:
In December 1994, pursuant to a pretrial agreement, the accused pled guilty to wrongfully using cocaine in July 1994, in violation of Article 112a, UCMJ, 10 U.S.C. § 912a. The convening authority approved the sentence the court members adjudged — a bad-conduct discharge, confinement for 90 days, and reduction to the grade of E-4, which was well within the ten month confinement limit of the pretrial agreement. The Court of Appeals for the Armed Forces set aside the sentence and ordered a rehearing because the military judge incorrectly answered two questions posed by the court members concerning the effect of a punitive discharge on *887 retirement benefits. United, States v. Greaves, 46 M.J. 133 (1997). At the rehearing in October 1997, court members adjudged a sentence of a bad-conduct discharge and reduction to the grade of E-l. The convening authority approved the discharge, but only a reduction to the grade of E-4. Appellant asserts that the military judge erred by (1) failing to grant a challenge for cause (2) failing to instruct the members on Department of Defense (DOD) drug policy; and, (3) incorrectly instructing the members on the maximum sentence. Finding no error, we affirm.
I. The Challenge for Cause
Prior to voir dire, the military judge instructed the members that they were to keep an open mind until all the evidence was presented and not to have a preconceived idea as to the appropriate type or amount of punishment to adjudge, if any. In response to the military judge’s questions, the members stated that they did not feel compelled to vote for any particular punishment “based solely upon the nature of the crime,” would keep an open mind and not foreclose consideration of any possible sentence until the court closed for deliberations, and would reach a sentence based on the evidence and not solely upon the nature of the offense.
In response to trial defense counsel’s questions during individual voir dire, Major Howe stated that, although he would keep an open mind, he thought that a sentence of no punishment would be an unlikely outcome, and, that in 99.9 percent of the cases, some punishment would be in order. Major Howe further stated that he felt no pressure to render any particular sentence in the appellant’s case and reaffirmed that he had no predisposition that a particular sentence was appropriate. The appellant challenged Major Howe for cause, claiming that he had a bias against a sentence of no punishment. The military judge denied the challenge.
A court member shall be removed for cause whenever it appears that the member should not sit “in the interest of having the court-martial free from substantial doubt as to legality, fairness, and impartiality.” Rule for Courts-Martial (R.C.M.) 912(f)(l)(N). A member expressing an inelastic attitude con-ceming an appropriate sentence is subject to challenge under this provision. R.C.M. 912(f)(l)(N), Discussion; United States v. McLaren, 38 M.J. 112, 118 (C.M.A.1993). “[T]he test is whether the member’s attitude is of such a nature that he will not yield to the evidence presented and the judge’s instructions.” McLaren, 38 M.J. at 118 (quoting United States v. McGowan, 7 M.J. 205, 206 (C.M.A.1979)).
The burden for establishing the grounds for the challenge is on the party making it. R.C.M. 912(f)(3). When a member has a personal view or attitude that will not yield to the evidence and the military judge’s instructions, the challenge is based on actual bias. United States v. Barrow, 42 M.J. 655, 660 (A.F.Ct.Crim.App.1995), aff'd, 45 M.J. 478 (1997). We give “great deference” to the judge’s decision regarding actual bias. United States v. White, 36 M.J. 284, 287 (C.M.A.1993). Military judges must be liberal in granting challenges for cause, but we will not overturn a ruling denying such a challenge except for a clear abuse of discretion in applying the liberal-grant mandate. Id. at 287; accord United States v. Giles, 48 M.J. 60 (1998).
We concur with the military judge’s denial of the challenge for cause. Major Howe did not express an inelastic attitude toward sentencing — either to the offense or to any particular punishment. He merely stated what should be patently obvious to all; while a sentence to no punishment is an option which should be considered, it is not often appropriate. Cf. McLaren, 38 M.J. at 119 n* (Gierke, J.) (“I would have substantial misgivings about holding that a military judge abused his discretion by refusing to excuse a court member who could not in good conscience consider a sentence to no punishment in a case where all parties agree that a sentence to no punishment would have been well outside the range of reasonable and even remotely probable sentences.”)
II. Admissibility of DOD Drug Policy
At the rehearing, the accused asked the military judge to instruct the members that it is Department of Defense policy to:
*888 (5) Treat or counsel alcohol and drug abusers and rehabilitate the maximum feasible number of them.
(6) Discipline and/or discharge drug traffickers and those alcohol and drug abusers who cannot or will not be rehabilitated, in accordance with the appropriate laws, regulations, and instructions.
Trial defense counsel cited Department of Defense Directive (DODD) 1010.4, 114(a)(5) and (6), Alcohol and Drug Abuse by DOD Personnel, 32 C.F.R. § 62.4(a)(5) and (6). The accused also asked for an instruction that the prosecution had the burden of convincing the members that the accused should be discharged over the presumption that he should be retained, and, that in order to “recommend that TSgt Greaves be discharged from the Service, you must find that there is evidence to support a finding that he cannot or will not be rehabilitated.” The military judge declined to give such an instruction.
The test to determine whether the military judge erred in denying a requested instruction is whether (1) the charge is correct; (2) it is substantially covered by other instructions given to the court members; and (3) “it is on such a vital point in the ease that the failure to give it deprived defendant of a defense or seriously impaired its effective presentation.” United States v. Winborn, 34 C.M.R. 57, 62, 1963 WL 4756 (C.M.A.1963). A military judge has substantial discretion in determining what instructions to give and we will not overturn that decision absent an abuse of discretion. United States v. Damatta-Olivera, 37 M.J. 474, 478 (C.M.A.1993). We will not find an abuse of discretion unless the military judge’s decision was arbitrary, clearly unreasonable, or clearly erroneous. United States v. Travers, 25 M.J. 61, 62 (C.M.A.1987).
The accused’s proposed instruction trips over the first hurdle of the Winbom test; it is misleading and is not a correct statement of the law. The DOD Directive states that drug abusers should be treated, counseled, and rehabilitated to the maximum extent possible. It does not say that drug abusers who can be rehabilitated cannot be discharged, nor does it set up a presumption against discharge. Rehabilitation may, but does not necessarily, mean return to duty. A punitive discharge “can be adjudged with or without regard to whether an accused has rehabilitative potential.” United States v. Ohrt, 28 M.J. 301, 306 (C.M.A.1989). Furthermore, it fails to give the members a full flavor of the DOD drug policy which remains adamant that “drug abuse is incompatible with the maintenance of high standards of performance, military discipline, and readiness.” DODD 1010.4, H 4(a).
Furthermore, the proposed instruction would inject command policy into the court’s deliberations. “Hence, whether it was trial counsel or defense counsel who first broached the subject of command policy, the mention of such policy before the members improperly invades the province of their sentencing deliberations.” United States v. Grady, 15 M.J. 275, 276 (C.M.A.1983).
III. Maximum Sentence Instruction
At the rehearing, the accused asked the military judge to instruct the members that the maximum sentence they could adjudge was the maximum sentence approved by the convening authority after the original trial (bad-conduct discharge, confinement for 90 days, reduction to the grade of E-4). He based his request on R.C.M. 810(d)(1) and 1107(e). The trial counsel objected, claiming that the rules cited by the defense were no longer valid because R.C.M. 810 had been changed in the Manual for Courts-Martial, United States (1995 ed.). Based on the plain language contained in R.C.M. 810(d)(1) from the 1995 Manual, the military judge ruled that the maximum sentence was a dishonorable discharge, confinement for 5 years, total forfeitures, and reduction to the grade of E-1, the same maximum the accused faced at his original trial.
On appeal, the accused has resurrected this issue, but in a somewhat different form. He now argues, for the first time, that the application to his case of the rules from the 1995 Manual violates the Ex Post Facto Clause of the Constitution. The government contends that the Ex Post Facto Clause doesn’t apply because the statute changed in 1992, two years before the accused commit *889 ted the offense, and the accused waived the issue by failing to raise it at trial.

A. Waiver

The Court of Appeals for the Armed Forces has not ruled on the applicability of the waiver doctrine to assertions of ex post facto violations in military law. United States v. Gorski, 47 M.J. 370, 375 (1997). Normally, in order for an accused to waive a constitutional right, his waiver must be knowing and intelligent. Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). We agree with the government that an accused can waive at least some of the protections afforded him by the Ex Post Facto Clause. See United States v. Pedrazoli, 45 M.J. 567 (A.F.Ct.Crim.App.1997) (Pearson, S.J., concurring in the result) (by failing to object to application of new sentencing rules as explained by the military judge, accused knowingly and intelligently waived application of ex post facto doctrine); see also United States v. Gilcrist, 106 F.3d 297 (9th Cir.1997) (holding accused waived ex post facto issue by agreeing to use 1994 sentencing manual); but see United States v. Smitherman, 956 F.2d 1131 (11th Cir.1992) (per curiam) (holding accused waived (forfeited) ex post facto objection to sentence and sentencing process by not raising it).
While the accused never mentioned the term ex post facto, he specifically asked the military judge to instruct the court members that the maximum punishment they could impose was the sentence previously approved by the convening authority. Under these circumstances, the accused did not waive this constitutional right.

B. Ex Post Facto Doctrine

The Ex Post Facto Clause of the Constitution provides: “No Bill of Attainder or ex post facto Law shall be passed.” U.S. Const. art. I, § 9, cl. 3.
It is settled, by decision of this Court ..., that any statute which punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with crime of any defense available according to law at the time when the act was committed, is prohibited as ex post facto.
Beazell v. Ohio, 269 U.S. 167, 169-70, 46 S.Ct. 68, 70 L.Ed. 216 (1925). The Ex Post Facto Clause of the Constitution was “intended to secure substantial personal rights against arbitrary and oppressive legislation and not to limit the legislative control of remedies and modes of procedure which do not affect matters of substance.” Beazell, 269 U.S. at 171, 46 S.Ct. 68 (citations omitted). “Even though it may work to the disadvantage of a defendant, a procedural change is not ex post facto.” Dobbert v. Florida, 432 U.S. 282, 293, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977).
Rehearings are governed by Article 63, UCMJ, 10 U.S.C. § 863. Prior to 1992, the applicable portion of Article 63 read as follows: “Upon a rehearing ... no sentence in excess of or more severe than the original sentence may be imposed____” (Emphasis added). Effective 24 October 1992, the law changed to read: “Upon a rehearing ... no sentence in excess of or more severe than the original sentence may be approved....” National Defense Authorization Act for Fiscal Year 1993, Pub.L. No. 102-484, 106 Stat. 2315, 2506 (1992) (emphasis added); see Manual for Courts-Martial, United States, A21-47 (1995 ed.).
Congress has authorized the President to prescribe procedural rules for courts-martial “which may not be contrary to or inconsistent with [the Uniform Code of Military Justice].” Art. 36 UCMJ, 10 U.S.C. § 836. The President establishes these rules in the Manual for Courts-Martial. While federal statutes, such as the UCMJ, take precedence over the rules contained in the Manual, the President may create “rules that are constitutional and provide greater rights for the individual...” United States v. Davis, 47 M.J. 484, 485-86 (1998) (quoting United States v. Lopez, 35 M.J. 35, 39 (C.M.A.1992)).
Pursuant to his authority under Article 36, UCMJ, the President implemented Article 63 with R.C.M: 810(d). Prior to the 1992 change to Article 63, R.C.M. 810(d)(1) stated *890 in pertinent part: “[Ojffenses on which a rehearing ... has been ordered shall not be the basis for punishment in excess of or more severe than the legal sentence adjudged at the previous trial or hearing, as ultimately reduced by the convening or higher authority....” R.C.M. 810(d)(1). Despite the fact that Article 63 changed in 1992, the President did not change the rule implementing the statute until 1995, after the accused’s original trial, but before the rehearing. At the time of the rehearing, it read, in part: “[0]ffenses on which a rehearing ... has been ordered shall not be the basis for an approved sentence in excess of or more severe than the sentence ultimately approved by the convening or higher authority following the previous trial or hearing....” Exec. Order 12960 (1995) (emphasis added).
It is clear that there was no change in the statute that governed the accused’s case. The instruction on the maximum sentence given by the military judge at the rehearing comported with the version of Article 63 which was in effect before the accused committed his offense and at the time of the rehearing. Thus, the accused is not entitled to any relief based on the statute.
But, we may not end our inquiry there. Because of the President’s rule-making power under Article 36, UCMJ, we must determine whether R.C.M. 810(d)(1) is a procedural rule or one which granted the accused a substantial right more favorable than the statute. If it is a procedural rule, the ex post facto doctrine does not apply and the military judge was correct in his decision on the maximum punishment. If the rule provides the accused with a substantial right, then he is entitled to relief, as long as the rule is not “contrary to or inconsistent with” the 1992 statute. If the rule in effect at the time of the commission of the offense is contrary to or inconsistent with the statute, then the terms of the statute take precedence.
Whether a change involves a substantial right or is merely procedural has been the topic of considerable debate at the Supreme Court. The Court has only recently provided a coherent definition of the term “procedural.” “[Ijt is logical to think that the term refers to changes in the procedures by which a criminal case is adjudicated, as opposed to changes in the substantive law of crimes.” Collins v. Youngblood, 497 U.S. 37, 45, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990).
In Hopt v. Utah, 110 U.S. 574, 4 S.Ct. 202, 28 L.Ed. 262 (1884), due to a change in the law between the date of the offense and the date of trial, a convicted felon was permitted to testify against the accused. The court recognized that the change in the law had a detrimental impact on the accused, but found the law was not ex post facto because “it neither made criminal a theretofore innocent act, nor aggravated a crime previously committed, nor provided greater punishment, nor changed the proof necessary to convict.” Dobbert, 432 U.S. at 293, 97 S.Ct. 2290 (citing Hopt, 110 U.S. at 589, 4 S.Ct. 202).
In Lindsey v. Washington, 301 U.S. 397, 57 S.Ct. 797, 81 L.Ed. 1182 (1937), the accused was sentenced to a mandatory term of confinement of 15 years, with the actual term of confinement being set by the board of prison, under a statute which was passed after the commission of his offenses. The statute in effect at the time of the offenses provided a 15-year maximum but permitted the court to set a minimum of between six months and five years. The Supreme Court held that application of the new statute to the accused violated the Ex Post Facto Clause of the Constitution.
It is true that petitioners might have been sentenced to fifteen years under the old statute. But the ex post facto clause looks to the standard of punishment prescribed by a statute, rather than to the sentence actually imposed. The Constitution forbids the application of any new punitive measure to a crime already consummated, to the detriment or material disadvantage of the wrongdoer. It is for this reason that an increase in the possible penalty is ex post facto, regardless of the length of the sentence actually imposed, since the measure of punishment prescribed by the later statute is more severe than that of the earlier.
Id. at 401, 57 S.Ct. 797 (citations omitted).
In Dobbert, between the time the accused committed the offenses and his trial, the *891 Supreme Court of the United States had overturned the Georgia death penalty statute as violative of the Eighth and Fourteenth Amendments. Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). At the time, the Florida death penalty statute provided that “a person convicted of a capital felony was to be punished by death unless the verdict included a recommendation of mercy by a majority of the jury.” Dobbert, 432 U.S. at 288, 97 S.Ct. 2290. The Florida Supreme Court invalidated the Florida death penalty procedures as being inconsistent with Furman. The Florida legislature enacted new death penalty procedures in which the judge could impose the death penalty despite the recommendation of the jury to the contrary, and that is what happened to Dobbert. Dobbert, 432 U.S. at 288-291, 97 S.Ct. 2290. Dobbert claimed the change in procedure deprived him of a substantial right to have the jury determine, without review by the trial judge, whether he should be put to death. The Supreme Court of the United States held that the new statute was “clearly procedural” as it “simply altered the methods employed in determining whether the death penalty was to be imposed; there was no change in the quantum of punishment attached to the crime.” Id. at 293-94, 97 S.Ct. 2290.
In Weaver v. Graham, 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981), the Supreme Court examined the effect of a Florida law that changed the way good time was computed for prisoners. Even though the statute only curtailed future credits, not ones already earned, the Court held that by postponing the date the accused was eligible for early release, the statute was ex post facto.
In Collins v. Youngblood, the accused received a sentence of life imprisonment and a $10,000 fine. After his conviction and sentence were affirmed, he applied for a writ of habeas corpus claiming that the state statute upon which he was convicted did not authorize both punishments, therefore invalidating his conviction and sentence. Before the writ could be considered by the court of criminal appeals, the state changed the law permitting an appellate court to reform a sentence not authorized by law. The state court of criminal appeals reformed the sentence by eliminating the $10,000 fine. The Supreme Court held that the change in the law was procedural, and thus did not entitle the accused to relief.
In California Department of Corrections v. Morales, 514 U.S. 499, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995), a change in the law, after the accused’s incarceration for murder, permitted the parole board to defer yearly parole hearings for up to three years. The Supreme Court held the rule to be procedural since it did not increase the punishment attached to his crime. “The amendment creates only the most speculative and attenuated possibility of producing the prohibited effect of increasing the measure of punishment for covered crimes, and such conjectural effects are insufficient under any threshold we might establish under the Ex Post Facto Clause.” Id. at 509, 115 S.Ct. 1597.
In 1983, Florida had enacted a series of statutes authorizing the state department of corrections to award early release credits to prisoners when the inmate population exceeded predetermined levels. In 1992, a new statute cancelled credits granted prisoners who had been convicted of certain offenses. In Lynce v. Mathis, 519 U.S. 433, 117 S.Ct. 891, 137 L.Ed.2d 63 (1997), the Supreme Court held that, as applied to Lynce, who had been returned to jail based on the cancellation of the credits, the law violated the ex post facto doctrine.
After considering the Supreme Court precedents, we are convinced that R.C.M. 810(d)(1) is a procedural rule. There was no change in the quantum of punishment attached to the crime, merely the manner of determining the sentence on a rehearing. “The policy underlying the ex post facto prohibition is the notion that it would be unfair to apply to the defendant retroactively a law of greater severity than the law in effect at the time of his conduct.” Wayne R. LaFave and Austin W. Scott, Jr., Criminal Law § 12 (1972). But, there is no unfairness here. The accused did not, as a result of the rehearing, face an increase in the sentence for his offenses — the convening authority was limited to approve a sentence no greater than the one he received at his initial trial, and he *892 did so. The change in R.C.M. 810(d)(1) to comply with the intent of Article 63, UCMJ, did not deprive the accused of a substantial right. There was no violation of the Ex Post Facto Clause of the Constitution.
Even if we had found that R.C.M. 810(d)(1) was substantive rather than procedural, the accused would still not be entitled to relief if we found that R.C.M. 810(d)(1) was contrary to or inconsistent with the 1992 version of Article 63. Article 36(a), UCMJ, 10 U.S.C. § 36(a). We find that the R.C.M. 810(d)(1) in effect when the accused committed his offense was inconsistent with the Article 63 then in existence. The statute was enacted specifically to change the way sentencing re-heatings were handled to bring them closer to the federal system in which the sentence adjudged at a rehearing is not restricted by that adjudged earlier. The intent of the statute was to have the accused face on rehearing the same maximum sentence authorized in the original trial, with the understanding that, because of the restrictions on the convening authority’s action, the accused could not be punished more severely than the sentence adjudged at the original trial. See Manual for Courts-Martial, United States A21-47 (1995 ed.). Thus, the terms of the statute control.
IV. Conclusion
The findings and sentence are correct in law and fact, and no error prejudicial to the substantial rights of appellant occurred. Accordingly, the findings and sentence are
AFFIRMED.
Senior Judge SNYDER and Judge SENANDER concur.