UNITED STATES, Appellee

v.

WALTER L. BULL, First Lieutenant, U. S. Army, Appellant

3 USCMA 635, 14 CMR 53

No. 3248

Decided January 15, 1954

LT COL George M. Thorpe, U. S. Army, for Appellant.
LT COL William R. Ward, U. S. Army, and 1ST LT Ezra B. Jones, Jr., U. S. Army, for Appellee.

## Opinion of the Court

GEORGE W. LATIMER, Judge:

The accused was found guilty by a general court-martial of negligent homicide in violation of Article 134, Uniform Code of Military Justice, 50 USC § 728, and drunken driving in violation of Article 111, Uniform Code of Military Justice, 50 USC § 705. He was sentenced to be dismissed from the service and to forfeit all pay and allowances. Following approval by intermediate reviewing authorities, we granted his petition so as to review the accuracy and sufficiency of the law officer's instructions. Because of the issues, we set forth the evidence in some detail.

At about 4:00 pm on October 18, 1952, the accused was driving his private automobile on a main highway bound for his home in Darmstadt, Germany. He stopped to pick up Elfriede Schork, a hitchhiker, and thereafter proceeded as before. She observed that at intervals he would drink from what appeared to be a "coca-cola" bottle, and while so doing would hold the steering wheel of the car steady with his left knee. Some five minutes after entering the car, Miss Schork noticed a young girl bicycling along the graveled shoulder of the road. When first noticed she was within a short distance of, and travelling in the same direction as, the

636

automobile. Just as the vehicle came abreast of the bicyclist, and while the accused was again drinking from the bottle held in his right hand, the automobile veered toward and struck the bicycle. The girl was knocked to the ground and fatally injured. The accused stopped, returned to the location of the victim, who was lying at the side of the road, and then flagged a passing automobile. There were four sergeants in that car and they took the injured girl to a hospital in the nearby town of Aschaffenburg. She expired prior to arrival at the hospital. Accused's automobile was travelling at approximately forty miles per hour at the time of the impact. The sky was clear and visibility was excellent. The highway was dry, straight, flat, and hard-surfaced near, and at the scene of, the accident. The bicycle was demolished, and the accused's automobile was quite badly damaged on the right front side.

Three of the four sergeants mentioned above testified and stated that accused, immediately after the accident, appeared to have been drinking. The odor of alcohol was noticeable at a distance of four feet, and accused's speech was somewhat garbled. The two military policemen who took the accused to the Aschaffenburg military police station testified he was under the influence of alcohol. Their conclusion was based on the facts that his eyes were glassy, his speech "faltering," he weaved slightly when standing, the odor of liquor on his breath was noticeable, and he manifested a slight degree of motor incoordination. When examined by a medical officer some three hours after the accident, accused's blood alcohol content was 1.15 milligrams per cubic centimeter.

Accused presented evidence to the effect that on the day in question he had had one or two drinks of cognac at about 10:00 am; that he consumed two bottles of beer at approximately 2:30 pm; and that he appeared sober to some witnesses who saw him shortly before he started the drive to Darmstadt. Accused testified that just as he drew abreast of the victim, she swerved her bicycle to the left into the

path of his car; that she did so without giving any kind of warning; that he had his automobile under control; and that at all times he was using his hands to manipulate the steering wheel.

Accused first assigns as error the fact that there was no instruction on the theory of accidental homicide. We do not believe that the assignment is meritorious. The accused did not submit any instruction on this theory; but he now contends the law officer should have, without prompting or suggestions, told the court-martial that "a homicide which is the result of an accident or misadventure in doing a lawful act in a lawful manner . . . is excusable." Manual for Courts-Martial, United States, 1951, paragraph 197c, page 351. We shall pass by the principle that, if an accused desires a particular theory stressed, a request should be made because we believe he ignores the fact that the law officer required the court-martial specifically to find that the accused was not doing a lawful act in a lawful manner. The law officer predicated a finding of guilty on the court-martial finding facts which would meet the test of the following instruction:

". . . The court is instructed that to find the accused guilty of Charge I and its specification it must be satisfied by legal and competent evidence beyond a reasonable doubt that, first, Rosa Rosskopf is dead. Secondly, that her death was unlawfully caused near Aschaffenburg, Germany, on or about 18 October 1952 by a negligent act of the accused, viz., by driving a motor vehicle against the said Rosa Rosskopf in a negligent manner, specifically by operating it at an excessive rate of speed, failing to keep it under control and/or failing to yield proper clearance when attempting to pass the bicycle which the said Rosa Rosskopf was operating; . . . The court is further advised that negligent homicide is defined as unlawfully causing the death of another by simple negligence, that is, by an act or omission which, although not negligent to such a degree as to justify

637

a charge of involuntary manslaughter, nevertheless exhibits a lack of that degree of care for the safety of others which a reasonably prudent person would have exercised under the circumstances."

In addition, he instructed on both included offenses of assault and battery and simple assault. He predicated a finding of guilty on those included offenses upon unlawful acts; and so it is somewhat tenuous to contend now that the court could find excessive speed, failure to keep a car under control, or other conduct exhibiting a lack of due care without being convinced that the accused did not do "a lawful act in a lawful manner." A finding that the act was done without due care necessarily involves a finding that the act was not done in a proper manner. A single act, for this purpose, cannot be both lawfully done and criminally negligent. Certainly, in the absence of a request, we are not disposed to reverse for a mere failure by the law officer to give an instruction which is no more than the converse of an instruction actually given.

Accused next argues that the law officer's definition of drunkenness, as given in connection with the second specification charging the offense of drunken driving, was misleading, confusing, indefinite, and overly abstract. The law officer gave the elements of drunken driving and then informed the court that "any intoxication which is sufficient sensibly to impair the rational and full exercise of the mental and physical faculties is drunkenness. In other words, there must be no . . . deterioration of the accused's physical ability to act like a normal rational person." The second sentence of this instruction which amounts to an elaboration of the other parts of the instruction is assailed as being prejudicially incorrect. Torn from context, the sentence is questionable but when the instructions are considered as a whole, the issue is presented in an acceptable and non-prejudicial manner. With the exception of the questioned sentence, the instruction is in the exact words of the Manual and in effect it declares that a sensible impairment of the faculties is an impairment capable of being perceived by the senses. If the accused's conduct is not such as to create the impression within the minds of observers that he is unable "to act like a normal rational person," there can be no sensible impairment of his faculties. If, because of intoxicating liquors, there was a perceptible lessening of accused's ability to act like a normal rational person, then it may be said that accused's faculties were sensibly impaired. When taken in context and interpreted in the light of other portions of the instructions, the law officer's statement was not prejudicial. At most, it was not a model of clarity. However, the accused having failed to request clarification of the instruction at trial, he may not do so now. United States v. Johnson, 3 US CMA 447, 13 CMR 3.

The decision of the board of review is affirmed.

Chief Judge QUINN concurs.

BROSMAN, Judge (concurring):

While the principal opinion uses somewhat broader language than I can accept *in vacuo*, I have no trouble in concurring in its application to the peculiar facts of the case at bar. What I have just said bears special reference to that portion of the opinion which deals with the necessity for a specific instruction on accidental homicide.

II

As I see it, whether an instruction of this nature is to be demanded in a particular case must depend on exactly what was said by the law officer in charging on the elements of the offense alleged. In this respect it must be obvious that each case must necessarily rest on its own bottom. Cf. United States v. Heims, 3 USCMA 418, 12 CMR 174.

I am in full rapport with my brothers in their certainty that the members of the court-martial in the case at bar could not reasonably have found the accused guilty of negligent homicide under the instructional phrasing used as to elements, and, at the same time,

have believed that the death of the little girl was the product of accident. For this reason I agree with them that the law officer did not err in omitting to instruct specifically and directly on accidental homicide, failing a request to do so. This does not mean, of course, that I believe that the giving of such an instruction *sua sponte* would not have accorded with the better practice.

### III

We are dealing here, I think, with a situation quite different from one involving self-defense, in which we have generally held an instruction to be required when the possibility of excuse on this theory is reasonably raised by the evidence. United States v. Ginn, 1 USCMA 453, 4 CMR 45. There, the idea embodied in the accused's position is not only markedly collateral to the crime charged, but at the same time it is more complex and less cognizable through the unguided perception of the court-martial. Thus, when compared with accidental homicide, it is much more genuinely *affirmative* in nature. As to it, the court-martial stands in urgent need of advice, and almost never will instruction on offense elements alone afford its members the direction they require.

And the same is true, but for a different reason, in another area—and one in which the members of this Court on occasion have been in some disagreement. I am referring here to the question of the necessity for an explicit instruction on unpremeditated murder following a wholly adequate charge on the premeditated offense. While my brothers have been willing to dispense with specificity in this area at times, I have not done so as a general thing. Whatever the right and wrong of this, I am sure that we have another problem here.

In a theoretical sense, all lesser included crimes are charged in the allegation of a principal offense. This must be true else a finding of guilty as to one of them could not lawfully be returned by a court-martial. This, as I understand it, is the reason behind our holding that the law officer must instruct *sua sponte* on all lesser crimes reasonably raised by the evidence in order to comply with the mandate of Article 51(c), Uniform Code of Military Justice, 50 USC § 626. United States v. Clark, 1 USCMA 201, 2 CMR 107. Thus we have a situation involving the necessity for detailed instructions on an offense charged. United States v. Clay, 1 USCMA 74, 1 CMR 74. In the case before us now, however, we are dealing not with elemental instructions, but rather with the necessity for a charge on an affirmative defense. Provided the latter is brought into issue, both are required, of course. Yet as to the affirmative defense—in my view, that is—more leeway, a greater play, is allowable. For these reasons I am able to concur outright in the Court's opinion in this case.