UNITED STATES, Appellee

v

FAY C. WHITE, Specialist Five, U. S. Army, Appellant

21 USCMA 583, 45 CMR 357

No. 25,201

August 11, 1972

*Captain Robert H. Dickman* argued the cause for Appellant, Accused. With him on the brief were *Colonel Arnold I. Melnick, Lieutenant Colonel Joseph E. Donahue, Captain Francis X. Gindhart, Captain Gordon W. Hatheway, Jr.,* and *Captain William X. Parsons.*

*Captain Richard L. Menson* argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel Ronald M. Holdaway.*

## Opinion of the Court

DUNCAN, Judge:

The appellant contends that since four enlisted men served on the court-martial which tried and convicted him, the court was without jurisdiction to proceed for the reason that their presence was not as the result of his *personally written* request as required by Article 25, Uniform Code of Military Justice, 10 USC § 825. We agree with that contention.

Article 25(c)(1), Code, supra, provides in pertinent part:

"Any enlisted member of an armed force on active duty who is not a member of the same unit as the accused is eligible to serve on general and special courts-martial . . . *but he shall serve as a member of a court only if* . . . *the accused personally has requested in writing that enlisted members serve on it.*" [Emphasis supplied.]

See also paragraphs 4*b* and 61*h*, and Appendix 8, Manual for Courts-Martial, United States, 1969 (Revised edition).

The Government concedes and the record reflects that the presence of the enlisted men on this court resulted from an oral request by defense counsel. Furthermore, at trial, defense counsel related to the military judge that the defense intended to have the trial conducted before a court-martial which included enlisted members. White was not queried concerning the matter. The appellee argues, however, that in light of the legislative history of Article 25,—this was a procedural irregularity rather than a jurisdictional defect. Counsel maintain:

". . . [T]he reason Congress wanted this request to be in writing, was to prohibit the accused from later denying that he had ever made this request. There is not even a hint of Congressional intent that the written request was considered indispensable in clothing the court with jurisdiction."

Appellate defense counsel aver that "[t]he submission of a written request [by an accused] for enlisted members is as absolute a prerequisite to the jurisdiction of a court with such members as is a written request in the instance of trial by a military judge alone," citing United States v Dean, 20 USCMA 212, 43 CMR 52 (1970).

In *Dean,* this Court had before it the question of whether a court composed of a military judge alone (Article 16, Code, supra, 10 USC § 816)[1] had jurisdiction to try an accused who had not requested *in writing* that he be tried in that manner. At trial Dean had successfully made an oral request to be tried by military judge alone. A substantial portion of the Government's case supporting an oral choice of trial by judge alone relied on an analogy between Article 16 and Rule 23(a), Federal Rules of Criminal Procedure, which requires a *written* waiver of trial by jury, and the citation of numerous cases in which oral waiver of a jury trial had been held valid. In rejecting this analogy, a majority of this Court stated:

". . . The cited cases are decisively different from the one now before us. Courts established under Article III of the Constitution are in existence and retain their jurisdiction, irrespective of whether a defendant waives his right to trial by jury. But a military court's jurisdiction does not exist unless the court is created in accordance with the statute authorizing it. In the often repeated words of Mr. Justice Peckham in McClaughry v Deming, 186 US 49, 62, 46 L Ed 1049, 22 S Ct 786 (1902):

'. . . A court-martial is the creature of statute, and, as a body or tribunal, it must be convened and constituted in entire conformity with the provisions of the statute, or else it is without jurisdiction.'

. . . . .

"Without compliance with the provisions of Article 16 for a request in writing, a court composed of a miltary judge alone is not lawfully constituted as a court. . . .

". . . We are not free to alter a plain requirement of the law, even though in this instance the oral answers of the appellant make clear his desire to be tried by the judge alone." [*Ibid.,* at pages 214, 215.]

See also United States v Brown, 21 USCMA 516, 45 CMR 290 (1972); United States v Nix, 21 USCMA 76, 44 CMR 130 (1971); United States v Rountree, 21 USCMA 62, 44 CMR 116 (1971); United States v Fife, 20 USCMA 218, 43 CMR 58 (1970).

Prior to passage of the Military Justice Act of 1968, Public Law 90–632, 90th Congress, 2d Session, 82 Stat

---

[1] Article 16 provides in pertinent part that a court-martial (special or general) may consist of:

"(1)(B) only a military judge, if before the court is assembled the accused, knowing the identity of the military judge and after consultation with defense counsel, requests *in writing* a court composed only of a military judge and the military judge approves. . . ." [Emphasis supplied.]

1335, it was not possible for an accused to elect to be tried by ▮▮▮▮▮ ▮ a military judge alone. The 1968 Act amended Article 16, Code, supra. With regard to the question before us in this case, enlisted men were not qualified to sit as court members prior to 1948, and then only under the Articles of War. Public Law 759, 80th Congress, 2d Session, 62 Stat 628.

In attempting to determine whether the instant problem should be solved by classifying the above-cited requirement of Article 25(c) (1), Code, supra, as only procedural, or classifying it as jurisdictional, as we did in *Dean,* supra, a review of the legislative history of the provision is set forth.

The legislative genesis of the question before us in this case is found in House Resolution 20, 79th Congress, 2d Session. That Resolution authorized the committee on military affairs to investigate the national war effort, with particular emphasis to be placed on court-martial procedures and the judicial system of the Army. A special subcommittee, chaired by Representative Durham of North Carolina, held hearings on the matter and issued House Report No. 2722, 79th Congress, 2d Session, entitled "JUDICIAL SYSTEM, UNITED STATES ARMY." The following is contained therein:

"Recommendation 3:

"That Congress consider amending article of war 4 in such a manner as to provide that when charges are brought against enlisted men for trial by special or general court martial, they shall be informed of their right to have enlisted men sit on the court;

"That if the accused so requests, enlisted men shall be appointed to the number of one third of the total membership of the court;

"That enlisted men so appointed shall be selected from other companies or equivalent organizations than that of the accused person and that of the officer bringing the charges; and

"That failure to comply with this provision shall be a jurisdicitonal error." [Emphasis supplied.]

During the 80th Congress, the Secretary of War forwarded to the House of Representatives a draft of a bill to amend the Articles of War. This draft bill was offered in the House of Representatives and became H. R. 2575, 80th Congress, 1st Session. Included therein was a proposed amendment to "ART. 4. WHO MAY SERVE ON COURT-MARTIAL," the second subsection thereof reading in part as follows:

"All enlisted persons . . . shall be competent to serve on general and special courts-martial for the trial of enlisted persons and *persons of these categories shall be detailed for such service when deemed proper by the appointing authority.*" [Emphasis supplied.] [Hearings before House Armed Services Committee on H. R. 2575, 80th Congress, 1st Session, page 1904.]

In the same session of Congress, Mr. Durham introduced H. R. 576, a bill to amend the Articles of War, which embodied the recommendations of House Report No. 2722. Although not a member of the subcommittee which considered H. R. 2575, Mr. Durham was given permission to sit during the hearings and to participate in the examination of those who testified on the bill. He also appeared as a witness and filed with the committee an analysis of H. R. 576 and a copy of House Report No. 2722. The following portion of the analysis of H. R. 576 is pertinent:

"Section 3: (a) This section provides that when charges are brought against an enlisted man for trial by general or special court martial, enlisted men shall be appointed to at least one-third of the total membership of the court and that accused shall be informed of his right to demand that enlisted personnel sit on the court." [House Hearings, supra, page 2163.]

H. R. 2575 was referred to the Legal Subcommittee of the Committee on

Armed Services of which Representative Elston was Chairman. Upon adoption of the bill (Public Law 759, supra), it became popularly known as the "Elston Act."

The War Department was represented before the Elston Subcommittee by Under Secretary of War Royall. In explaining the provisions of H. R. 2575 for including enlisted men as members of courts-martial, Secretary Royall stated:

"As to enlisted men on the courts —I will come back to that subject in a minute—the bill follows the recommendation of the American Bar Association Committee. The belief has been expressed in some quarters that enlisted men should be required on all courts trying enlisted men and that the matter should not be left discretionary with the appointing authority. On the other hand, there is a definite feeling that enlisted men may not wish to be tried by other enlisted men. And some combat commanders feel that it would be detrimental to discipline to have enlisted men on courts. For these reasons, I think, the committee left the matter flexible—at least those are our reasons for approving the committee's recommendation.

. . . . .

"Mr. ELSTON. Have you given some study to H. R. 576, the bill introduced by Mr. Durham of the Armed Services Committee?

"Mr. ROYALL. I had a comparison made of that bill by the Judge Advocate General's Department, and I did look at their summary of the differences between the two. I don't remember that in detail—it probably will be dealt with better by General Hoover or General Greene—but I am familiar enough to feel that the differences should be resolved in favor of this bill, that is H. R. 2575.

"Mr. ELSTON. I would like to have you enlarge a little more on the two bills as they now provide for enlisted men serving in courts-martial cases. I notice, in H. R. 2575,

that enlisted men will only serve when it is deemed proper by the appointing authority, whereas the bill introduced by Mr. Durham makes it possible for an enlisted man to insist that enlisted men be members of the court.

"Mr. ROYALL. Well, sir, that is a question that certainly has two sides to it. I don't know whether you will recall it or whether you were present, but when I appeared before the House Military Affairs Committee, I believe it was before I was Under Secretary, I expressed the personal opinion that service on courts martial should be a right of the enlisted man. I am now inclined the other way, but do not have such a strong feeling in the matter." [House Hearings, supra, pages 1920–1922.]

Mr. Royall went on to explain that from conversations with members of the American Bar Association committee he learned that they had recommended that the issue be left flexible and not made mandatory because they believed that enlisted men did not favor enlisted men serving on the court and, if they served, would be inclined to be considerably harsher than officer court members. Mr. Royall continued:

". . . Our idea was that with this discretionary provision, the Secretary or Under Secretary of War or the Judge Advocate General would issue regulations making enlisted men on courts the usual practice and then if it proved by experience that it was unwise we wouldn't be bound by the statute to continue it. That is what led me to finally reach the conclusion that it should not be made mandatory.

"Mr. ELSTON. Don't you think that where it is optional with the accused to ask for enlisted men on the court, the matter would be taken care of?

"Mr. ROYALL. That would serve to meet in part the first objection, as to whether an enlisted man wants

586

to be tried that way. It wouldn't meet it entirely because there would be a certain feeling I think in some instances by an enlisted man that if he didn't ask for enlisted men on the court it would be a reflection one way or the other on him—on his being guilty or innocent." [House Hearings, supra, page 1923.]

During his testimony on H. R. 2575, Brigadier General Hoover, Assistant Judge Advocate General of the Army, was asked:

"Mr. ELSTON. One of the most controversial questions is with regard to the service of enlisted men in court-martial cases. H. R. 2575 provides that they may serve when it is deemed proper by the appointed authority. The bill introduced by Mr. Durham makes it mandatory.

"Where they are appointed to the court only when deemed proper by the appointing authority, do you feel that that would be sufficient? . . . I would like to have you give us your opinion about handling it that way or permitting them to serve where the enlisted man wants them to serve.

"General HOOVER. This bill, I think, because of its permissive character, allows an experiment of permitting enlisted men to sit on courts in the trial of other enlisted persons. We don't know, frankly, how it is going to work. The compulsory participation of enlisted persons on demand of the accused might cause trouble." [House Hearings, supra, page 2021.]

Upon reappearance before the Committee, Mr. Royall testified:

"We will provide by regulation for enlisted men to serve, but we don't want it frozen in the statute." [House Hearings, supra, page 2147.]

In reporting H. R. 2575 to the House of Representatives, the Committee on Armed Services recommended the following language as an amendment to Article of War 4:

"Enlisted persons . . . shall be competent to serve on general and special courts-martial for the trial of enlisted persons *when requested in writing by the accused* at any time prior to the convening of the court. When so requested, no enlisted person shall, without his consent, be tried by a court the membership of which does not include enlisted persons to the number of at least one-third of the total membership of the court." [Emphasis supplied.] [House Report No. 1034, 80th Congress, 1st Session, page 1.]

In a discussion of the bill, House Report No. 1034, supra, page 6, states, with regard to whether enlisted men should be authorized to sit as members of a court-martial in the trial of other enlisted men:

"The War Department agrees that they should, at the option of the appointing authority. Our committee agrees that they should, at the option of the defendant and has amended section 3 accordingly. We seriously doubt that the inclusion of enlisted men as members of the court will benefit enlisted men who are defendants, however, *the choice is properly a right of the defendant*. Once having exercised that right he must assume the responsibility for the results of his choice." [Emphasis supplied.]

H. R. 2575, as amended, was passed and became law. Public Law 759, supra.

Article 25, Code, supra, follows, in substantially the same language, the amended Article of War 4. The only change of note, with regard to the question before us in this case, was the insertion of the word "personally" before the phrase "has requested in writing." It is clear from the hearings on the Code that this addition was made to reflect congressional intent that an accused "personally makes that choice and does the signing personally and doesn't delegate it to anyone else—counsel or otherwise." Hearings before House Armed Serv-

ices Committee on H. R. 2498, 81st Congress, 1st Session, page 1147.

The writer was not a member of this Court when United States v Dean, supra, was decided; therefore, discussion of the logic of the majority opinion and the able dissent by Chief Judge Quinn are of no moment. The majority view in *Dean* is now and has been for some time a firm part of military jurisprudence. The thrust of the language from the Court's opinion in *Dean*, "[w]e are not free to alter a plain requirement of the law," is as applicable here as there. (*Ibid.*, at page 215.)

Prior to 1948, only officers were statutorily eligible to serve as court members. By the amendment of Article of War 4, the Congress declared that Army enlisted men would thereafter be eligible to serve as court members and, over the strong objection of the War Department, gave to the accused enlisted man the right to demand their presence. With the enactment of the Code in 1950, this eligibility and the concurrent right was extended uniformly to enlisted men of all of the services.

Eligibility in general, however, is not the whole of the question. Article 25 clearly states that an enlisted man *"shall serve* as a member of a court *only* if . . . the accused personally has requested in writing that enlisted members serve on it."* (Emphasis supplied.) The option is a right of the defendant and a convening authority is without power to designate enlisted members to sit, absent the *personal written request of the accused.* Not even the accused's counsel may act for him. Manifestly, Congress intended that the accused's personal written request be an indispensable prerequisite to an enlisted man's membership on a particular court. No other interpretation of the clear statutory language is reasonable.

The appellee urges that the requirement of a personal written request was inserted as a measure to prevent the later complaint of a disgruntled accused who had elected to be tried by a panel with enlisted members. While we do not turn our decision on this aspect of legislative intent, we view the requirement as having been enacted to make very certain that no person other than an accused could cause the presence of enlisted members on a panel. In any event, the language used is so clearly indicative of the mandatory feature of the provision that the search for legislative intent is of diminished importance.

While recognizing the difference between the basic court-martial jurisdiction features of Article 16, Code, supra, and the provisions of Article 25, Code, supra, which provide for service on court-martial panels, we do not interpret the provisions of Article 25 as mere procedure. An accused cannot be compelled to be tried by a military judge alone; likewise, an accused cannot be compelled to be tried by a panel with enlisted members. In each instance the choice is his. There is not enough conceptual difference between the two statutory requirements of written requests, logically to justify a rule in the instant case appreciably different from the *Dean* rule.

This situation is not unlike that which was before the Supreme Court in McClaughry v Deming, 186 US 49, 46 L Ed 1049, 22 S Ct 786 (1902). Deming, a Captain in the Volunteer Army of the United States, was tried and convicted by a court-martial composed of officers in the Regular Army. The Supreme Court reversed, not because the officers of the Regular Army were not eligible to serve as members of *a* court-martial but because they were not eligible to serve on Deming's court-martial inasmuch as the then existing statute required that one in Deming's position be tried by courts-martial "composed entirely of militia officers." (*Ibid.*, 186 US, at page 57.) As the Court said:

". . . The attempt at the creation of a court failed because such attempt was a plain violation of the statute. A court-martial is wholly unlike the case of a permanent court created by constitution or by statute and presided over by one who had

588

some color of authority although not in truth an officer *de jure,* and whose acts as a judge of such court may be valid where the public is concerned. The court exists even though the judge may be disqualified or not lawfully appointed or elected. But in this case the very power which appointed the members of and convened the court violated the statute in composing that court. It is one act, appointing the members of and convening the court, and in performing that act the officer plainly violated the law. Is such a court a valid court and the members thus detailed *de facto* officers of such valid court? Clearly not." [*Ibid* 186 US, at page 64.]

In the case at bar, *the attempt at the creation of a court failed because such attempt was a plain violation of the statute.* The enlisted membership of this court could have been validly appointed *only* if the accused had personally requested their presence in writing. Since he did not, the convening authority was without statutory authority to designate them as members. In such circumstances, the court was without jurisdiction to proceed. McClaughry v Deming, supra. Cf. United States v Dean, supra; United States v Harnish, 12 USCMA 443, 31 CMR 29 (1961). See also United States v Robinson, 13 USCMA 674, 33 CMR 206 (1963).

The decision of the Court of Military Review is reversed. The record of trial is returned to the Judge Advocate General of the Army. A new hearing may be ordered.

Chief Judge DARDEN concurs.

QUINN, Judge (dissenting):

I would affirm the decision of the Court of Military Review. See my dissent in United States v Dean, 20 USCMA 212, 215, 43 CMR 52 (1970).