**UNITED STATES, Appellee,**

v.

**Specialist McTyran T. LANIER, United States Army, Appellant.**

**ARMY 9700598.**

U.S. Army Court of Criminal Appeals.

2 April 1999.

Johnston, Senior Judge, filed concurring opinion.

For Appellant: Captain Jodi E. Terwilliger–Stacey, JA (argued); Colonel John T. Phelps II, JA; Lieutenant Colonel Michael L. Walters, JA; Major Holly S.G. Coffey, JA (on brief).

For Appellee: Major Lyle D. Jentzer, JA (argued); Colonel Russell S. Estey, JA (on brief).

Before JOHNSTON, Senior Judge, SQUIRES, and ECKER, Appellate Military Judges.

## OPINION OF THE COURT ON RECONSIDERATION

ECKER, Judge:

A panel of officer and enlisted members sitting as a general court-martial convicted appellant, contrary to his pleas, of aggravated assault with a loaded firearm and willful discharge of a firearm in violation of Articles 128 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 928 and 934 [hereinafter UCMJ]. The approved sentence included a bad-conduct discharge, confinement for six months, forfeiture of all pay and allowances,[1] and reduction to the grade of Private E1.

In our memorandum opinion, dated 16 March 1999, we rejected appellant's claims of error and found substantial compliance with the requirements of Article 25(c)(1), UCMJ. This latter issue had not been cited as error. On 24 March 1999, on our own motion, we vacated that opinion to reconsider the forum selection issue. Upon reconsideration we again affirm the findings of guilty and the sentence.

Appellate defense counsel assert four errors.[2] We find none of the asserted errors

---

1. The convening authority waived the forfeitures of all pay and allowances required by Article 58b, UCMJ, effective 21 April 1997 until 29 October 1997, and directed that such monies be paid to appellant's wife.

2. We also note that the military judge, as asserted by appellant in his submission pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), failed to formally obtain appellant's entry of a plea on the record. Under the circumstances, this failure is nothing more than a mere

have merit, that the circumstances surrounding the election of trial by a panel including enlisted members represents substantial compliance with the requirements of Article 25(c)(1), and that appellant's court-martial was therefor properly constituted. The claim of an instruction error and the circumstances surrounding the election of trial by a panel including enlisted members, however, warrant comment.

## FACTS

Appellant, his pregnant wife, and several friends were at an enlisted club on Fort Benning when an altercation involving appellant's friend, Corporal (CPL) M, erupted. This led to the club being cleared and closed for the night by management.

All members of appellant's group had consumed alcohol during the evening, but no one was described as drunk or intoxicated. Appellant did not see the fight start, but was asked to assist CPL M. Upon doing so, he noticed CPL M being assaulted by "about 10–15 people." Specialist (SPC) C, another of appellant's friends, who was also present, was restrained by a friend because of his temper.

As the club cleared, appellant took CPL M out the front door, and, seeing CPL M's assailant apparently waiting for him to leave the club, told CPL M to run to his car and leave immediately. Appellant then linked up with SPC C and, forgetting about his wife, hurried to SPC C's white Honda to leave the area. At about this time, CPL M was again confronted by a group that included his attacker. The two exchanged punches, and, being outnumbered, CPL M attempted to flee to his car and escape.

As appellant and SPC C ran to the Honda, SPC C yelled from behind appellant that CPL M had been "jumped," and was being pursued and beaten by a group of people. He then yelled for appellant to, "Get the gun, get the gun." Near the car, appellant turned and saw CPL M being attacked by, according

to his estimate, "about 30 assailants." Corporal M's shirt had been ripped off and the group was surrounding and striking him as he lay in a protective "ball-like" position.

Appellant's friends variously estimated the attackers to number from ten to as many as fifty persons. They characterized the attack as a frenzied, group assault using fists and shod feet. They described a scene involving a main body of attackers, supplemented by opportunists who would run up and reach in to land blows upon CPL M.

Appellant testified that he was very scared, that it was mass confusion, and that he knew the attack was doing "serious damage" to CPL M because he looked like a "rag doll" being tossed around in the street. There was no evidence that weapons were observed or used in the assault. Appellant, however, claimed that this possibility was a concern of his at the time.

As a result of SPC C's urging, appellant retrieved a loaded pistol from the car trunk, chambered a round, and proceeded to fire four to six shots in the general direction of the crowd around CPL M. Appellant claimed that he fired well above the heads of the crowd, endangering no one, and that he did so to disperse the crowd because of concern for CPL M's life and the safety of his wife. However, appellant readily acknowledged that other evidence contradicted this claim. When pressed, appellant also admitted to forgetting about his wife and that he had no idea whether she was in the crowd, the club, or somewhere else when he fired the pistol.

Staff Sergeant (SSG) M was serving as a Staff Duty Noncommissioned Officer and arrived to assist with closing of the enlisted club for the evening. Upon arrival, he observed "a fight, a large group of people surrounding a fight of a couple of soldiers moving their way across the street from [the club] ... into the parking lot area." About the same time he heard "a male voice yell, 'Get the gun, get the gun' some profanities

---

irregularity not amounting to prejudicial error. *United States v. Taft,* 21 U.S.C.M.A. 68, 44 C.M.R. 122, 1971 WL 12464 (1971).

Such errors are easily avoided by careful attention to detail and the contents of the appropriate

trial script. Trial counsel, along with the military judge, are responsible for ensuring that such errors are prevented.

were used and at that time I heard the first shot just as I began entering the spectators." Staff Sergeant M then testified that he turned and observed appellant, who was by a white car, fire a handgun. Appellant fired about five more shots in a fanning motion, from left to right, pointing his arm at shoulder level. Further, as appellant fired, he moved toward the crowd. He then saw appellant chamber another round and fire again, aiming higher towards a transformer on a pole that was somewhat between appellant and the crowd.

Staff Sergeant M was very specific and certain about his observations. He explained that his training and own self-interest made him very careful to keep appellant in sight as he attempted a flanking maneuver on him. He also described a companion of appellant's as "egging him [appellant] on." Staff Sergeant M later assisted the Military Police (MP), upon their arrival, with crowd control.

Mr. R E testified that as he approached the scene in his taxicab, he heard but did not see, two shots. He then looked and saw appellant fire five or six more rounds. Appellant appeared scared, but did not appear to aim at anybody. Rather, he just pulled the gun up and started shooting with the pistol moving in a fanning motion, the elevation of which appeared to go up in an arc. However, on further questioning, Mr. R E modified his opinion by noting that initially the weapon had actually been pointed directly at him. In his own words, "the first shot was like I was almost looking down the barrel of a gun, and then the other shots kind of went up in an arc."

As a result of appellant's firing the pistol, the crowd broke off the assault and CPL M got to his feet and started to leave the area. After appellant threw the pistol away, he went to help CPL M and both soldiers were apprehended. Upon their apprehension, SSG M overheard appellant, and later SPC C, tell the MP's that a male wearing a Raiders' jacket had jumped them and fired shots at appellant and his friends. Staff Sergeant M immediately advised the MP's that this was not true and that appellant was the shooter.

When the MP's asked CPL M if he needed medical attention, he declined. While CPL M exhibited only scrapes and bruises, he later claimed that the beating dislocated a vertebrate in his back. However, further questioning established that this condition was related, at least in part, to a prior automobile accident.

The evidence also showed that a car parked across the street from, and roughly midway along the side of, the enlisted club was struck by two bullets. The location of the car was slightly to the left of the pole mentioned by SSG M, and thus also generally between appellant and the crowd. One bullet broke the rear window while the second entered the trunk through the left, rear quarter panel. The pistol, along with empty shell casings, was recovered at the scene. Forensic testing indicated that a slug recovered from the car came from the pistol.

During the Article 39(a), UCMJ, session held to discuss proposed instructions, the following colloquy occurred:

MJ: .... Tell me Mr. P[ ], you think the issue of defense of another has been raised, is that basically what you are saying?

CDC: Yes, sir....

....

MJ: [B]ut let me ask this. Which offenses does the instruction apply to, if it in fact applies?

CDC: I think the whole issue is raised with respect to all of the offenses....

....

MJ: I'm inclined to agree with the government ... that the defense of another issue relates to the assault offense ... and not the other offenses.... I'm going to give the instruction at 5–3–1,[3] which relates to defense of another. Is that the instruction that you desire?

CDC: Well, yes....

....

---

3. *See* Dep't of Army, Pam. 27–9, Military Judges' Benchbook, para. 5–3–1 (30 Sept. 1996) [hereinafter Benchbook].

MJ: .... [I]f I give the defense of another instruction ... I still must give the self-defense instructions to explain to the members the position that [M] had to be in and therefore, which ones of the self-defense instructions would counsel desire that I give? ...

CDC: Well, I don't believe that that's necessary and I think that will be confusing....

....

MJ: I'm inclined to give the instruction at 5–2–1, ... [a]ssault involving deadly force and the instruction at paragraph 5–2–6, other instructions, self-defense, opportunity to withdraw and state of mind and provocateur [mutual combatant] and burden of proof and note 7, withdrawing as reviving a right to self-defense. I realize that's a lot of instructions, but I think it's based on what defense believes is the issues in the case. I don't believe there's another way to focus the members....

Again, as I see it, the accused has to stand in the place of [M], and the only way for the members to assess whether he is standing in the place of [M] is to tell the members what force [M] could have used under the circumstances. Defense objects to that further clarification, I understand ... and the government, I'm not sure if you agree or disagree....

TC: No, your honor. Actually, the government agrees.

MJ: All right.

(R. at 262–70).

Consistent with the defense's wishes, the military judge gave a tailored instruction, substantially as set forth in the Benchbook at para. 5–3–1, outlining the special defense of defense of another. The focus of this instruction correctly oriented the members to view the situation through appellant's eyes.

Contrary to the defense's wishes, the military judge instructed on elements of the law of self-defense.[4] All of the various self-defense instructions were tailored in terms of CPL M's knowledge and beliefs, rather than appellant's.[5] An instruction explaining the right to use excessive force to deter [6] was not requested or discussed, and was not given.

At the conclusion of all the instructions and prior to releasing the members for deliberation, the military judge asked, "Other than any objections previously stated by counsel, *do you have any objections or requests for additional instructions at this time?*" (Emphasis supplied). Both counsel responded, "No, sir."

## *LAW*

### *I. Instructions.*

"The military judge shall give the members appropriate instructions on findings." Rule for Courts–Martial 920(a) [hereinafter R.C.M.]. This duty includes "[s]uch other explanations, descriptions, or directions *as may be necessary* and which are properly requested by a party *or which the military judge determines, sua sponte, should be given.*" R.C.M. 920(e)(7)(emphasis supplied); *United States v. Sellers,* 33 M.J. 364 (C.M.A. 1991); *United States v. Birdsong,* 40 M.J. 606, 609 (A.C.M.R.1994).

---

4. The bulk of the instructional effort focused on the basic instruction for self-defense involving deadly force. This basic instruction was supplemented by instructions covering ability to flee an attack, mutual combatant, and good faith withdrawal.

5. By way of example, the military judge stated: Therefore, it is important for you to consider the actual force that Private [M] could have used himself, because the accused stands under the circumstances, in the position of Private [M] and he may use only the force that Private [M] himself could have used.... First, *Private [M] must have had a reasonable belief* that death or grievous bodily harm was about to be inflicted upon himself [such that this is

an objective, reasonable man test].... Secondly, Private [M] *must have actually believed* that the amount of force he used was required to protect [himself].... To determine [his actual belief], you must look at the situation *through the eyes of Private [M].*... As long as *he actually believed* that the amount of force he used was necessary to protect himself [excessive or different force] does not matter.

(Emphasis supplied). The explanation of concepts such as withdrawal and mutual combatant were also framed from the viewpoint of CPL M and his subjective beliefs.

6. *See* Benchbook, para. 5–2–5.

■ Instructions on findings must include a description of any special defenses under R.C.M. 916. *United States v. Poole,* 47 M.J. 17, 18 (1997)(citing R.C.M. 920(e)(3)). In determining whether an instruction on a defense is required, "the question is whether some evidence was presented to which the members might attach credit." *Birdsong,* 40 M.J. at 609 (citations omitted). Any doubt concerning the giving of an instruction should be resolved in favor of the accused. *United States v. McMonagle,* 38 M.J. 53, 58 (C.M.A.1993)(citing *United States v. Steinruck,* 11 M.J. 322, 324 (C.M.A.1981)); *United States v. Carroll,* 45 M.J. 604, 607 (Army Ct.Crim.App.1997), *pet. denied,* 48 M.J. 446 (1998); *United States v. Barrows,* 48 M.J. 783, 787 (Army Ct.Crim.App.1998).

■ The military judge's refusal to give a requested instruction is reviewed for abuse of discretion. *Poole,* 47 M.J. at 19 (citing *United States v. Damatta–Olivera,* 37 M.J. 474, 478 (C.M.A.1993), *cert. denied,* 512 U.S. 1244, 114 S.Ct. 2760, 129 L.Ed.2d 875, (1994); *United States v. Eby,* 44 M.J. 425 (1996)). The party claiming abuse of discretion bears the burden of presenting conclusive argument on the claim. *United States v. Mosley,* 42 M.J. 300, 303 (1995)(citing *United States v. Mukes,* 18 M.J. 358, 359 (C.M.A.1984)). Application of the doctrine of abuse of discretion is to be used sparingly and only in those cases where "a miscarriage of justice would otherwise result." *United States v. Fisher,* 21 M.J. 327, 328–29 (C.M.A.1986)(citing *United States v. Frady,* 456 U.S. 152, 163 n. 14, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982)); *United States v. Reynolds,* 36 M.J. 1128, 1131–32 (A.C.M.R.1993). In *Damatta–Olivera,* the court adopted a three-part test for resolving such claims of error.[7] 37 M.J. at 478; *United States v. Simmons,* 48 M.J. 193, 195 (1998).

■ The correctness of an instruction, as a question of law, is reviewed *de novo. United States v. Maxwell,* 45 M.J. 406, 424 (1996)(citing *United States v. Snow,* 82 F.3d 935 (10th Cir.1996)). To justify reversing a conviction, an unobjected to instructional defect must (1) rise to the level of plain error and (2) be such that it had an unfair, prejudicial impact on the member's deliberations. *United States v. Eckhoff,* 27 M.J. 142, 144–45 (C.M.A.1988)(citing *U.S. v. Fisher,* 21 M.J. 327). Absent plain error, defense counsel must object to the instructions as given or proffer additional, corrective or clarifying instructions or the matter is waived. *Maxwell,* 45 M.J. at 426 (citations omitted); *United States v. Smith,* 34 M.J. 200, 203–204 (C.M.A. 1992); *Reynolds,* 36 M.J. at 1131–32 (citing R.C.M. 920(f)).

■ Where an error renders an instruction so vague and incomplete that it is tantamount to no instruction at all, *United States v. Smith,* 25 C.M.R. 86, 89, 1958 WL 3073 (1958)(citing *United States v. Gray,* 6 U.S.C.M.A. 615, 20 C.M.R. 331 (1956)), or effectively precludes application of a defense to the facts of the case, *United States v. Martinez,* 40 M.J. 426, 431 (C.M.A.1994)(citing *United States v. Curry,* 38 M.J. 77, 79 (C.M.A.1993); *Eckhoff,* 27 M.J. at 142), the defect constitutes "plain error." However, in determining prejudice, the instruction must be viewed as a whole and in light of all other instructions given in the case. *Maxwell,* 45 M.J. at 424 (citing *Snow,* 82 F.3d at 938–939)("a reviewing court must examine the instructions *as a whole* " (emphasis supplied)); *Smith,* 34 M.J. at 205 (citing *United States v. Bradley,* 28 M.J. 197, 202 (C.M.A. 1989))(an instruction must "reasonably convey" to the members the correct legal standard by which they are to decide the particular issue); *U.S. v. Smith,* 25 C.M.R. 86; *U.S. v. Bradley,* 28 M.J. 197; *cf. United States v. Hardy,* 46 M.J. 67, 75–76 (1997); *Damatta–Olivera,* 37 M.J. at 478.

## II. Self-defense and Defense of Another.

■ Defense of another is a special defense recognized under R.C.M. 916, but ap-

---

7. Thus, in testing for abuse of discretion where the military judge refuses to give a requested instruction, the court held the question turns on "whether (1) the charge [proposed instruction] is correct; (2) 'it is not substantially covered in the main charge'; and (3) 'it is on such a vital point in the case that the failure to give it deprived defendant of a defense or seriously impaired its effective presentation.' " *Damatta–Olivera,* 37 M.J. at 478 (citing *United States v. Winborn,* 14 U.S.C.M.A. 277, 282, 34 C.M.R. 57, 62, 1963 WL 4756 (1963)).

plies only to homicide, attempted homicide, assault with intent to kill and assaults under Articles 90, 91 or 128, UCMJ. *See United States v. Scott,* 40 M.J. 914, 917 (A.C.M.R. 1994); *United States v. Ravenel,* 26 M.J. 344, 351 (C.M.A.1988); R.C.M. 916(e)(5) and accompanying discussion. Its application is constrained by the principles of self-defense set out in R.C.M. 916(e)(1–4) as well as the terms of subparagraph (e)(5) itself. *See generally Martinez,* 40 M.J. at 430. As a result, an accused essentially steps into the shoes of the defended person, *Scott,* 40 M.J. at 917 (citing R.C.M. 916(e)(5)), and acts at his own peril when undertaking the defense of another. R.C.M. 916(e)(5) discussion.

■ Under this defense, the accused, as defender, is entitled to use:

A. **deadly force** if he apprehends, on reasonable grounds, that death or grievous bodily harm is about to be inflicted wrongfully on the defended person, and believes that the force used is necessary for protection against death or grievous bodily harm, *Martinez,* 40 M.J. at 430 (citing *United States v. Jackson,* 15 U.S.C.M.A. 603, 36 C.M.R. 101, 1966 WL 4427 (1966)); R.C.M. 916(e)(1);

B. **a dangerous weapon or means likely to produce death or grievous bodily harm** if he apprehends, on reasonable grounds, that bodily harm is about to be wrongfully inflicted upon the defended person, and in order to deter the assailant, offers but does not actually apply or attempt to apply such means or force as would be likely to cause death or grievous bodily harm, *United States v. Acosta–Vargas,* 13 U.S.C.M.A. 388, 32 C.M.R. 388, 1962 WL 4507 (1962); *United States v. Bransford,* 44 M.J. 736, 738 (Army Ct.Crim.App.1996)(citing *United States v. Thomas,* 11 M.J. 315 (C.M.A.1981)), *pet. denied,* 46 M.J. 410 (1997); R.C.M. 916(e)(2); and

C. **any lesser battery, attempted battery, or offer of battery,** if he apprehends, upon reasonable grounds, that bodily harm is about to be wrongfully inflicted upon the defended person, and believes that the force used is necessary for protection against bodily harm, provided that the force used by him is less than force reasonably likely to produce death or grievous bodily harm, *United*

*States v. Smith,* 44 M.J. 387, 392–93 (1996)(citing *United States v. Sawyer,* 4 M.J. 64, 65 (C.M.A.1977)); R.C.M. 916(e)(3).

The accused's "alter ego" status imposes significant limitations on the availability and application of the defense of defense of another. If the defended person was an aggressor, engaged in mutual combat, or provoked the attack giving rise to the accused's apprehension that force was needed to defend that person, the defense of defense of another is not available. This is true regardless of whether the accused is mistaken or unaware of the actual circumstances, and "the accused is guilty of any assault that the accused commits on the apparent assailant." R.C.M. 916(e)(5) discussion.

However, if the defended person withdraws in good faith after his aggression, combat, or provocation *and before* the force, weapon, means, or assault occurred, the defense is available to the accused. R.C.M. 916(e)(4). Finally, the accused *"may not use more force than the person defended was lawfully entitled to use under the circumstances."* R.C.M. 916(e)(5)(emphasis added); *Scott,* 40 M.J. at 917; *see generally Martinez,* 40 M.J. at 430; *cf.* Benchbook, para. 5–2–5 (use of excessive force to deter.)

### DISCUSSION

■ Counsel have not cited us to, nor have we found precedent specifically addressing the giving of an instruction over counsel's objection. Nevertheless, it is clear that just as when the military judge decides not to give a requested instruction, when he gives an instruction over counsel's objection, the standard of review is abuse of discretion. R.C.M. 920(e)(7); *see also Damatta–Olivera,* 37 M.J. at 478 (citing *U.S. v. Smith,* 34 M.J. 200 (C.M.A.1992)). Accordingly, we will apply this standard to the military judge's handling of the various requests involving instructions in appellant's case.

■ An instruction on the defense of another was clearly required in appellant's case. R.C.M. 920(a), (e)(7). The military judge discharged his duty in this regard through the use of the basic instruction for this defense contained in the Benchbook at

para. 5–3–1. This instruction, indirectly and through generalized comment, also addressed the linkage between defense of another and the defense of self-defense, and referred to issues such as intentional provocation and mutual combat. Accordingly, the basic instruction, as a whole, "reasonably conveyed by implication" an adequate definition of the defense of defense of another, and directed the members to fully consider the defense in light of the evidence and applicable legal standards. *Smith,* 34 M.J. at 204–205; *Bradley,* 28 M.J. at 202.[8]

 Nevertheless, the military judge concluded it was necessary to supplement the basic defense of another instruction using instructions on the law of self-defense. We find no abuse of discretion in his decision. First, the Benchbook clearly contemplates such supplementation. Benchbook, para. 5–3–1 note (2: Other instructions). More importantly, the evidence raised several very specific and significant factual issues bearing on whether CPL M's behavior might have precluded appellant's use of the defense of defense of another. Understandably, trial defense counsel did not want these issues highlighted. However, the military judge's duty to instruct fully and evenhandedly on all issues bearing on guilt or innocence is paramount to the tactical desires of the parties. R.C.M. 920(a) discussion; *Damatta–Olivera,* 37 M.J. at 479. Thus, appellant's objection to use of supplementary instructions from the law of self-defense is completely without merit.

The supplementary instructions implicate two other issues. First, use of the complete instruction on self-defense involving deadly force[9] was not necessary under the facts of the case and its tailoring in terms of CPL M's knowledge and belief made it cumbersome and confusing. Secondly, the military judge neglected to give a tailored version of the self-defense instruction involving use of excessive force to deter.[10] However, appellant did not object to the instructions given. Absent plain error, any potential objection was forfeited. *Maxwell,* 45 M.J. at 426 ("[M]erely requesting an instruction is ordinarily not sufficient to preserve a claim of error.... There must be an objection [addressing the alleged error or defect in the instructions given] ... before the court is closed for deliberations.") (citations omitted); *Smith,* 34 M.J. at 203; *Bradley,* 28 M.J. at 202; *see also Snow,* 82 F.3d at 940.

Testing for plain error, we are satisfied that these defects were neither obvious nor substantial.[11] We start by noting that no objection to the instructions *as given* was lodged by either counsel. Similarly, the members never sought clarification in light of those instructions. *See Eckhoff,* 27 M.J at 145. This was probably due to the fact that any confusion generated by the tailored self-defense instruction inured to appellant's benefit. *U.S. v. Maxwell,* 45 M.J. 406, 426.

Additionally, defense counsel's rejection of all self-defense supplementary instructions arguably indicates an intent to waive use of

---

8. The sua sponte duty of the military judge ends with the proper instruction on the special defense. *United States v. Bull,* 3 U.S.C.M.A. 635, 637–38, 14 C.M.R. 53, 54, 1954 WL 2090 (1954). Any instruction stressing a particular theory of the special defense must be requested by the accused or it is waived. *Id.* Matters in clarification or amplification of requested instructions need not be given without a request. *United States v. McDonald,* 6 U.S.C.M.A. 575, 577, 20 C.M.R. 291, 293, 1955 WL 3568 (1955); *see also United States v. Sanders,* 41 M.J. 485, 486 (1995) (it is the defense that must be instructed upon, not the facts which may support that defense); *United States v. Hensler,* 44 M.J. 184, 188 (1996)(factual instructions are sufficient if accused does not request tailoring). Factual defenses, as opposed to special defenses, do not invoke the sua sponte duty. *United States v. Brooks,* 25 M.J. 175, 178, 180 (C.M.A.1987).

9. Benchbook, para. 5–2–1.

10. Benchbook, para. 5–2–5.

11. In this regard, we note that application of the obverse of the *Damatta–Olivera* test would also appear appropriate. While we have not found it necessary to analyze appellant's case in this manner, the test for an abuse of discretion for giving an instruction *over objection* might focus on whether (1) the instruction, as given by the military judge, was incorrect; (2) the issue was otherwise fully and correctly covered in the body of the instructions (e.g., necessity); and (3) the instruction created a substantial likelihood that the panel was confused or misled to the extent that appellant was deprived of a defense, evidentiary benefit, or otherwise denied the effective presentation of his case.

the omitted excessive force to deter instruction. Furthermore, this issue was raised through weak, contradictory evidence. *See Eckhoff*, 27 M.J. at 145. Finally, we are satisfied that in light of the other instructions given in the case, these errors did not contradict or otherwise render null the defense presentation. *U.S. v. Martinez*, 40 M.J. 426; *see also U.S. v. Bradley*, 28 M.J. 197. Accordingly, we find no plain error.

We note that the military judge correctly rejected the defense request that the members be instructed that defense of another also applied to the charge of willful discharge of a firearm. R.C.M. 916(e)(5). Presumably, the purpose of this request was to address the linkage between the concept of justification and the issue of the wrongfulness of the weapon's use in defending CPL M. However, this issue goes to the definition of wrongful, rather than application of a defense to that specific offense. Further, we note that a definition for "wrongful" was not included as part of the instructions on the elements of this offense.

Under the circumstances of this case we find no prejudice to appellant. The members undoubtedly recognized that, factually, a finding that appellant lawfully acted in defense of CPL M, meant that his discharge of the weapon as the means of doing so would not be "wrongful." Accordingly, we are satisfied that the term was defined by implication through the other instructions in the case. Finally, the member's findings clearly rejected appellant's claim of defense of another.[12]

■■■ Although not raised by appellate defense counsel, the additional issue concerning election of trial by enlisted panel is resolved against appellant for the following reasons. Article 25(c)(1), UCMJ, in pertinent part, permits enlisted membership on a court-martial "only if ... the accused personally has requested [such membership] orally on the record or in writing...." *Accord* R.C.M. 903(b)(1). In *United States v. White*, 45

C.M.R. 357, 1972 WL 14193 (1972), our superior court determined that compliance with Article 25's terms was a jurisdictional matter and that "personally" meant the making of the request was non-delegable. *Cf. United States v. Brandt*, 20 M.J. 74 (1985); *United States v. Brookins*, 33 M.J. 793 (A.C.M.R. 1991); *United States v. Hood*, 37 M.J. 784 (A.C.M.R.1993). This jurisdictional determination was based on *United States v. Dean*, 43 C.M.R. 52, 1970 WL 7427 (1970) which addressed the same issue from the perspective of compliance with Article 16, UCMJ.

We find that the appellant made a personal election and request for enlisted members on the record, but not a personal statement. This election was made in response to a question by the military judge, and was relayed to the judge by retained civilian defense counsel, after consultation with appellant *in the presence of the military judge*.

We have carefully analyzed *White* in light of the holding in *United States v. Turner*, 47 MJ 348 (1997). We believe that the logical and compelling conclusion flowing from *Turner* is that failures to comply with the strict terms of Article 16, UCMJ, are no longer considered errors of jurisdictional moment. Instead, they represent procedural non-compliance with statutory provisions, and must be tested for prejudice. Given that *White* was based on *Dean*, we believe that *Turner* necessarily means that technical non-compliance with Article 25, UCMJ, is not a jurisdictional defect. As such, we find on the facts of this case that appellant's personal request for enlisted members was in substantial compliance with the terms of Article 25(c)(1), UCMJ. UCMJ, art. 59(a).

We have reviewed the assignments of error personally asserted by appellant pursuant to *Grostefon*, 12 M.J. 431, and find them to be without merit.

The findings of guilty and the sentence are affirmed.

Judge SQUIRES concurs.

---

**12.** We believe the better course would be to develop a tailorable instruction defining this term. *See generally Black's Law Dictionary* (6th ed.1990) 1612–1613; *Roget's, The New Thesaurus* (expanded ed.1988) 1130; *Webster's Third New* *International Dictionary* (1961) 2642. Doing so would remove any doubt as to whether the members' findings resulted from having received full and correct instructions.

Senior Judge JOHNSTON concurring:

I concur with my brother's analyses of the assigned errors, including the asserted instructional error. Additional comments are needed, however, with regard to the application of Article 25, UCMJ. Even if we were to apply Article 25(c)(1) strictly, the colloquy concerning the selection of a panel including enlisted members shows actual compliance with that statute's requirement that the accused personally make the request.

MJ: So we're on line with everything. Has the accused made an election of forum?

TC: No, sir.

MJ: Has the accused made a decision? I believe he has already actually passed his two week period that I gave him. Specialist Lanier, have you and your attorneys further discussed your forum selection in this case? That means—remember I explained to you earlier that you had a right to various kinds of trials, one before officers, the other would include one-third enlisted members. If you didn't want either of those two types, you also had the right to ask for judge alone. Do you remember that discussion?

ACC: Yes, Your Honor.

CDC: Sir, would it be permissible for me to confer with the accused for about two minutes?

MJ: Sure.

(Accused and defense counsel conferred)

CDC: Yes sir, we have. We can make that now.

MJ: Go ahead.

CDC: We will have a court with enlisted.

MJ: Very well. I assume it's a contested case, is that correct?

CDC: Yes sir, it is.

MJ: ... Anything else we need to cover on the record?

TC: No, sir.

CDC: No, sir.

MJ: We are in recess.

On these unique facts, we should find that the accused made a personal selection on the record for his forum choice.